FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA AM 9:59
TAMPA DIVISION

CONGHAU HUU TO,
    PETITIONER,

V.

UNITED STATES OF AMERICA,
    RESPONDENT,

NO: 94-293-CR-T-17-(E)

8:14 CV1453 17 TBM

---

MOTION UNDER 28 U.S.C 2255
(F)(3), MOTION FOR RESENTENCING
IN LIGHT OF NEW LAW BY THE U.S.
SUPREME COURT.

1

# INDEX

1) COVER SHEET

2) STATEMENT OF CASE

3) MEMORANDUM OF POINT AND AUTHORITIES

4) 2255 (F)(3) AVENUE

5) RETROACTIVITY OF ALLEYNE

6) CONCLUSION

7) EXHIBIT A, INDICTMENT

8) EXHIBIT B, SENTENCING TRANSCRIPT

<u>MOTION UNDER 28 U.S.C 2255
(F)(3), MOTION FOR RESENTENCING
IN LIGHT OF NEW LAW BY THE
U. S. SUPREME COURT</u>.


COMES NOW, CONGHAU HUU TO, APPEARING PRO-
SE, RESPECTFULLY MOVES THIS HONORABLE COURT
TO RESENTENCE PETITIONER. PETITIONER'S SENTENCE
IS UNCONSTITUTIONAL AND UNJUST AS HE SUFFERS
FROM A LIFE SENTENCE PLUS 45 YEARS CONSECUTIVE
IN VIOLATION OF HIS DUE PROCESS AND HAS HAD THIS
BURDEN OF AN UNCONSTITUTIONAL SENTENCE FOR
ALMOST 20 YEARS.

PURSUANT TO THE U.S. SUPREME COURT'S
DECISION IN <u>ALLEYNE V. U.S</u> 133 S. ct. 2151, 186
L. ed 314, THIS DISTRICT COURT AND THE GOVERNMENT
HAD MISTAKEN AND ERRED IN A PROCEDURAL RULE
THAT IMPLICATED FUNDAMENTAL CONSTITUTIONAL
PROTECTION OF SIXTH AMENDMENT JURY-TRIAL
RIGHTS SO MOVANT'S SIXTH AMENDMENT RIGHT
WAS VIOLATED.


<u>STATEMENT OF THE CASE</u>


A NINE COUNTS INDICTMENT WAS SERVED ON
THE PETITIONER ON 12/21/94. 18 U.S.C 1962(c)
AND (d), 18 U.S.C 1951 (a), AND 18 U.S.C 924(c).

AFTER BEING FOUND GUILTY OF ALL NINE COUNTS

3

AT TRIAL, PETITIONER WAS SENTENCED ON 7/16/96.
PETITIONER HAD RECEIVED TWO CONCURRENT LIFE
SENTENCES FOR COUNTS ONE AND TWO, 240
MONTHS TO SERVE CONCURRENTLY WITH THE LIFE
SENTENCES FOR COUNTS 3, 4, 5, AND 6. A 5
YEARS CONSECUTIVE SENTENCE FOR COUNT 7, AND
TWO CONSECUTIVE 20 YEARS SENTENCES FOR COUNTS
8 AND 9. THE JURY WAS INSTRUCTED AT DELIBERATION
THAT IF THE DEFENDANT WAS FOUND GUILTY OF
COUNTS 3, 4, 5, AND 6, THEY HAD TO FIND THE
DEFENDANT GUILTY OF COUNTS 7, 8, AND 9 OF THE
INDICTMENT.

AT SENTENCING, PETITIONER RECEIVED TWO
CONCURRENT LIFE SENTENCES WHICH THE PETITIONER
WAS NEVER CHARGED IN THE INDICTMENT : PAGE 16
OF THE SENTENCING TRANSCRIPT "THE COURT. ALL
RIGHT THEN, THE COURT WILL RULE ON THE OBJECTIONS
I THINK I'VE FULLY DISCUSSED THE ACCOUNTABILITY
OF MR. TO FOR THE MURDER OF CON QUOC LE AND
43 IS THE APPROPRIATE LEVEL UNDER 2A1.1. HIS
ROLE IN THE OFFENSE IS THAT OF LEADERSHIP
AND THE 3 LEVEL ENHANCEMENT IS APPROPRIATE."
PAGE 17-18 "THE COURT - THERE'S CONSECUTIVE
SENTENCES, THE LIFE IMPRISONMENT AS TO COUNT
1 AND 2."

THE COURT ERRED IN SENTENCING PETITIONER
TO A LIFE SENTENCE BY ENHANCING PETITIONER
UNDER 2A1.1, FEDERAL FIRST-DEGREE MURDER,
A STATUTE THAT DID NOT EXIST IN PETITIONER'S

INDICTMENT. ALSO A 5 YEARS AND TWO 20 YEARS CONSECUTIVE SENTENCES ON COUNTS 7, 8, AND 9 WHICH THE COURT INSTRUCTED THE JURY THAT IF THEY FIND THE PETITIONER GUILTY OF COUNTS 3, 4, 5, AND 6 OF THE INDICTMENT, THEY MUST ALSO FIND THE PETITIONER GUILTY OF COUNTS 7, 8, AND 9. THE COURT ERRED IN ENHANCING PETITIONER WITH 45 YEARS CONSECUTIVE, IN VIOLATION OF THE PETITIONER'S DUE PROCESS. PETITIONER ALSO RECEIVED ENHANCEMENTS FOR OBSTRUCTION OF JUSTICE AND LEADERSHIP ROLE WITHOUT A JURY'S DETERMINATION, ALL IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHT UNDER THE SIXTH AMENDMENT.

## MEMORANDUM OF POINTS AND AUTHORITIES

ON 6/17/13, THE U.S. SUPREME COURT DECLARED IN ALLEYNE V. U.S. 133 S. ct. 2151, 186 L. ed. 2d 314 OVERRULED HARRIS V. U.S 536 U.S. 545, 122 S. ct. 2406 (2002), THAT ANY FACT THAT INCREASES A MANDATORY MINIMUM SENTENCE FOR A CRIME IS AN ACTUAL ELEMENT OF THE CRIME THAT MUST BE SEPARATELY SUBMITTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT. THE JURY'S DETERMINATION IS NECESSARY TO SATISFY A DEFENDANT'S RIGHT UNDER THE SIXTH AMENDMENT IN CONJUNCTION WITH THE DUE PROCESS CLAUSE. IN THIS CASE AS PROVEN WITH THE EXHIBITS OF PETITIONER'S INDICTMENT AND SENTENCING TRANSCRIPTS, IT CLEARLY

PROVES THAT HE WAS SENTENCED ILLEGALLY UNDER A STATUTE THAT WAS NEVER SEEN BY A JURY THAT WAS NOT IN HIS INDICTMENT THAT RESULTED IN A LIFE SENTENCE AND MORE AS WELL AS MULTIPLE ENHANCEMENTS THAT THE JUDGE AND NOT THE JURY FOUND HIM GUILTY FOR, IN VIOLATION OF HIS DUE PROCESS UNDER THE SIXTH AMENDMENT.

THE SUPREME COURT IN ALLEYNE EXTENDED THE RULE OF APPRENDI V. NEW JERSEY 530 U.S. 466, 120 S. ct. 2348 (2000) RECOGNIZING THAT ANY FACT WHICH INCREASES EITHER END OF THE SENTENCING RANGE PRODUCES A NEW PENALTY AND THEREFORE CONSTITUTES A PROVABLE INGREDIENT OF THE OFFENSE, "FACTS THAT INCREASE THE MANDATORY MINIMUM SENTENCE ARE THEREFORE ELEMENTS THAT MUST BE SUBMITTED TO THE JURY AND FOUND BEYOND A REASONABLE DOUBT". ALLEYNE V. U.S. 133 S. ct. 2151, 2158, 186 L. ed 2d. 314 (2013).

## AVENUE UNDER 2255(F)(3)

28 U.S.C. 2255(F)(3) PERMITS A FIRST 2255 MOTION TO BE CONSIDERED TIMELY, IF IT IS FILED WITHIN ONE YEAR OF A SUPREME COURT'S DECISION THAT CREATES A NEWLY RECOGNIZING RIGHT MADE RETROACTIVELY APPLICABLE TO CASES ON COLLATERAL REVIEW, 28 U.S.C. 2255(F)(3).

IF THE CIRCUIT PRECEDENT WAS INCONSISTENT WITH "THE LAW OF THE UNITED STATES OR IF THE OVERRULING OF CIRCUIT PRECEDENT IS A "FACT", THEN THE LIMITATION PERIOD BEGAN TO RUN WHEN "ALLEYNE" WAS DECIDED, SEE Mc QUIGGIN V. PERKINS, U.S. _ 133 S. ct. 1924, 1927, 185 L. ed. 2d. 1019 (2013).

## RETROACTIVITY OF ALLEYNE

ALLEYNE MUST BE GIVEN FULL RETROACTIVITY EFFECT TO CASES ON COLLATERAL REVIEW, AND TREATED AS A "WATERSHED RULE" AND NEW SUB-STANTIVE RULE OF LAW. FAILURE TO OBSERVE THE ALLEYNE RULE CARRIES A SUBSTANTIAL RISK THAT ONE ACCUSED WILL BE EITHER WRONGLY CONVICTED OR SUBJECTED TO A SENTENCE THAT THE LAW CANNOT IMPOSE ON HIM, WHICH NOT ONLY ERODES THE PUBLIC CONFIDENCE IN THE JUSTICE SYSTEM BUT IMPERILS THE SYSTEM'S INTEGRITY, UNDER THESE CIRCUMSTANCES, AND IN THIS CASE, THE INTEREST IN FINALITY MUST YIELD. ALLEYNE IS A NEW SUBSTANTIVE RULE OF LAW. NEW SUBSTANTIVE RULES GENERALLY APPLY RETROACTIVELY, SEE., SCHRIRO V. SUMMERLIN, 542 U.S. 348, 351, 124 S. ct. 2519, 159 L. ed. 2d. 442 (2004). A RULE IS SUBSTANTIVE RATHER THAN PROCEDURAL IF IT ALTERS THE RANGE OF CONDUCT OR THE CLASS OF PERSONS THE LAW PUNISHES. "Id. AT 353, THIS INCLUDES

DECISIONS THAT NARROW THE SCOPE OF A CRIMINAL STATUTE BY INTERPRETING ITS TERMS." Id. AT 351, SUCH RULES APPLY RETROACTIVELY BECAUSE THEY NECESSARILY CARRY A SIGNIFICANT RISK THAT A DEFENDANT STANDS CONVICTED OF AN ACT THAT THE LAW DOES NOT MAKE CRIMINAL" "OR FACES A PUNISHMENT THAT THE LAW CANNOT IMPOSE UPON HIM". BOUSLEY, 523 U.S. AT 620-21 (QUOTING DAVIS, 417 U.S. AT 346). "IN CONTRAST, RULES THAT REGULATE ONLY THE MANNER OF DETERMINING THE DEFENDANT'S CULPABILITY ARE PROCEDURAL." "SCHRIRO, 542 U.S. AT 353". "PROCEDURAL RULES DO NOT PRODUCE A CLASS OF PERSONS CONVICTED OF CONDUCTS THE LAW DOES NOT MAKE CRIMINAL, BUT MERELY RAISE THE POSSIBILITY THAT SOMEONE CONVICTED WITH USE OF THE INVALIDATED PROCEDURE MIGHT HAVE BEEN ACQUITTED OTHERWISE." Id. AT 352, (ALSO SEE CHAMBERS, 555 U.S. AT 122 WAS SUBSTANTIVE AND THEREFORE APPLIED RETROACTIVE) (ALSO SEE BEGAY, 553 U.S. AT 144-45); SHIPP, 589 F. 3d. 1090. UNDER THE FRAMEWORK OF TEAGUE V. LANE, 489 U.S. 288, 109 S. ct. 1060, AN OLD RULE APPLIES BOTH ON DIRECT AND COLLATERAL REVIEWS, BUT A NEW RULE IS GENERALLY APPLICABLE ONLY TO CASES THAT ARE STILL ON DIRECT REVIEW, A NEW RULE IS RETROACTIVELY IN A COLLATERAL PROCEEDING ONLY IF 1.) THE RULE IS SUBSTANTIVE OR 2.) THE RULE IS A WATERSHED RULE OF CRIMINAL PROCEDURE IMPLICATING THE FUNDAMENTAL FAIRNESS

AND ACCURACY OF CRIMINAL PROCEEDING, WHARTON
V. BOKTING, 549 U.S. 406, 416, 127 S. ct. 1173,
167 L. ed. 2d. 1 (2007) (INTERNAL QUOTATION
MARKS AND BRACKETS OMITTED) (DESCRIBING TEAGUE
V. LANE, 489 U.S. 288, 109 S. ct. 1060. IN THE
PETITIONER'S MOTION, IT IS CLEAR THAT ALLEYNE
APPLIES RETROACTIVELY AS IT MEETS BOTH PRONGS
OF RETROACTIVITY AS NOT ONLY IT IS A WATERSHED
RULE, BUT ALSO A NEW SUBSTANTIVE RULE.

   FINALLY, AND IN SHORT, PETITIONER SUFFERS
A LIFE SENTENCE AND 45 YEARS IN VIOLATION OF
HIS DUE PROCESS AS HE WAS SENTENCED UNDER
CODES AND ENHANCEMENTS THAT DO NOT EXIST
IN HIS INDICTMENT AND WERE NOT PROPERLY
SUBMITTED FOR A PROPER JURY DETERMINATION
ALL IN VIOLATION OF HIS SIXTH AMENDMENT AND
DUE PROCESS RIGHTS BY THE UNITED STATES
CONSTITUTION.

   UNDER "ALLEYNE", ANY FACT INCREASES A
MANDATORY MINIMUM SENTENCE FOR A CRIME IS
AN ACTUAL ELEMENT OF THE CRIME MUST BE
SEPARATELY SUBMITTED TO THE JURY AND PROVEN
BEYOND A REASONABLE DOUBT.


                    CONCLUSION


   PETITIONER PRAYS THAT THIS COURT WILL
GRANT HIS MOTION FOR THE ABOVE MENTIONED
REASONS IN THE INTEREST OF JUSTICE. THAT

PETITIONER WILL BE RESENTENCED AS HIS
SENTENCE STANDS UNCONSTITUTIONAL AND IN
VIOLATION OF DUE PROCESS.

## CERTIFICATE OF SERVICE

ON 6/16/14 TWO COPIES WERE FILED WITH
THE CLERK OF COURT FOR U.S. DISTRICT COURT,
MIDDLE DISTRICT OF FLORIDA (TAMPA), AND ONE
COPY TO THE U.S. ATTORNEY'S OFFICE, SUITE 300,
400 W. WASHINGTON ST., ORLANDO, FLORIDA 32801.

CONGHAU HUU TO
#18722018
U.S.P. LEWISBURG
P.O. BOX 1000
LEWISBURG, PA. 17837

UNITED STATES DISTRICT COUR[T]
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

Case No. 94-293-CR-T-2/-E

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE, ←
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TAI TAN PHAM,
a/k/a "Cao";
LIEM THANH LUONG,
a/k/a Luong Thanh Liem;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN.

# INDICTMENT

THE GRAND JURY CHARGES:

## COUNT ONE

1. At all times relevant to the Indictment, the Big Easy Restaurant, Inc., located at the Tampa Bay Mall, Tampa, Florida was a corporation organized and existing under the laws of the State of Florida, and which was engaged in the retail restaurant business and whose activities affected interstate commerce.

2.   At all times relevant to the Indictment, the Southland Corporation, a corporation organized and existing under the laws of the State of Texas, operated Store number 23741 located at 7124 North Dale Mabry Highway, Tampa, Florida, and engaged in the retail sale of food and other sundries in interstate commerce.

3.   At all times relevant to the Indictment, the Shanghai Buffet Restaurant located in Tampa, Florida was a corporation organized and existing under the laws of the State of Florida, and engaged in the retail restaurant business which activities affected interstate commerce.

4.   At all times relevant to the Indictment, defendants CONGHAU HUU TO, a/k/a "Tigo"; HAI VAN NGUYEN; LAP VAN LE, a/k/a "Lai Van Le", a/k/a "Luu Van Le", a/k/a "Johnny"; TUAN DUC PHUNG; TAI TAN PHAM, a/k/a "Cao"; LIEM THANH LUONG, a/k/a Luong Thanh Liem; TUNG VAN NGUYEN, a/k/a "Tony"; NGUYEN TU DOAN; AN THANH LE; TAM MINH LE; and DUNG QUOC NGUYEN, associated together and with others known and unknown to the Grand Jury, for the purpose of engaging in an organized plan and scheme to enrich themselves by committing armed robberies and to protect themselves from prosecution by committing acts involving murder.  The foregoing constituted an enterprise as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, which enterprise was engaged in and the activities of which affected interstate commerce.

2

5.   From at least as early as March 1993 and continuing up
to and including June 1994, in the Middle District of Florida and
elsewhere, the defendants,

> CONGHAU HUU TO,
> a/k/a "Tigo";
> HAI VAN NGUYEN;
> LAP VAN LE,
> a/k/a "Lai Van Le",
> a/k/a "Luu Van Le",
> a/k/a "Johnny";
> TUAN DUC PHUNG;
> TUNG VAN NGUYEN,
> a/k/a "Tony";
> NGUYEN TU DOAN;
> AN THANH LE;
> TAM MINH LE;
> and
> DUNG QUOC NGUYEN,

being persons employed by and associated with the enterprise
described in paragraph 4 of this Count, which was engaged in and
the activities of which affected interstate commerce, together
with others both known and unknown to the Grand Jury, did
knowingly, willfully and unlawfully, conduct and participate,
directly and indirectly, in the conduct of the affairs of such
enterprise through a pattern of racketeering activity, as defined
by Title 18, United States Code, Section 1961(1) and (5).

6.   The pattern of racketeering activity committed by the
defendants consisted of the following acts:

### RACKETEERING ACT ONE

The defendants, CONGHAU HUU TO, a/k/a "Tigo"; HAI VAN
NGUYEN; LAP VAN LE, a/k/a "Lai Van Le", a/k/a "Luu Van Le", a/k/a
"Johnny"; TUAN DUC PHUNG; TUNG VAN NGUYEN, a/k/a "Tony"; NGUYEN
TU DOAN; AN THANH LE; TAM MINH LE; and DUNG QUOC NGUYEN, named

3

below committed the following acts, any one of which alone
constitutes the commission of Racketeering Act One:

Racketeering Act 1(a)

    From at least as early as March 1993, and continuing up to
and including June 1994, in the Middle District of Florida, and
elsewhere, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

did knowingly, willfully, and unlawfully combine, conspire,
confederate, and agree together and with each other and with
other persons both known and unknown to the Grand Jury, to
unlawfully obstruct, delay, and affect commerce as that term is
defined in Title 18, United States Code, Section 1951(b)(3), and
the movement of articles and commodities in such commerce, by
robbery as that term is defined in Title 18, United States Code,
Section 1951(b)(1), in that the defendants did unlawfully agree
to take and obtain personal property consisting of jewelry and
United States currency by means of actual and threatened force,
violence, and fear of injury, in violation of Title 18, United
States Code, Section 1951.

4

Racketeering Act 1(b)

From at least as early as March 1993, and continuing up to and including June, 1994, in the Middle District of Florida and elsewhere, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree together and with each other and with other persons both known and unknown to the Grand Jury, to commit an act involving robbery, that is, ~~did~~ TO enter a dwelling with the intent to commit a robbery of the occupants therein, in violation of Florida Statutes 777.04(3) and 812.135.

### RACKETEERING ACT TWO

The defendants CONGHAU HUU TO, a/k/a "Tigo"; TUAN DUC PHUNG; AN THANH LE; TAM MINH LE; and DUNG QUOC NGUYEN, named below committed the following acts, any one of which alone constitutes the Commission of Racketeering Act Two:

5

Racketeering Act 2(a)

On or about April 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
TUAN DUC PHUNG;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully attempt to take and obtain personal property consisting of United States currency from an employee of the Big Easy Restaurant, Tampa, Florida, against his will by means of actual and threatened force, violence, and fear of injury in violation of Title 18, United States Code, Sections 1951(a) and 2.

Racketeering Act 2(b)

On or about April 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
TUAN DUC PHUNG;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

did commit an act involving murder, that is, to knowingly,
unlawfully, and willfully kill a human being, that is, Khanh Quoc
Le, while said defendants were engaged in the perpetration of a
robbery, by firing a shotgun and two handguns at the said Khan
Quoc Le while the defendants attempted to rob the said Khanh Quoc
Le, which robbery was perpetrated by the defendants, in violation
of Florida Statutes 777.04(3), 782.04(1)(a)(2)(d), and 777.011.

## RACKETEERING ACT THREE

On or about May 7, 1994, in the Middle District of Florida,
the defendant,

TUNG VAN NGUYEN,
a/k/a "Tony";
and
AN THANH LE;

together with others not indicted herein, did commit an act
involving robbery, that is, did enter a dwelling with the intent
to commit a robbery and did commit a robbery of the occupants
therein, in violation of Florida Statute 812.135.

## RACKETEERING ACT FOUR

On or about May 13, 1994, in the Middle District of Florida,
the defendant,

TUNG VAN NGUYEN,
a/k/a "Tony";
AN THANH LE;
and
TAM MINH LE;

together with others not indicted herein, did commit an act
involving robbery, that is, did enter a dwelling with the intent
to commit a robbery and did commit a robbery of the occupants
therein, in violation of Florida Statute 812.135.

7

## **RACKETEERING ACT FIVE**

On or about May 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
and
TUNG VAN NGUYEN,
a/k/a "Tony",

did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully take and obtain personal property consisting of United States currency with a value exceeding $8,000 from an employee of Southland Corporation, Tampa, Florida, against his will by means of actual and threatened force, violence, and fear of injury in violation of Title 18, United States Code, Section 1951(a).

## **RACKETEERING ACT SIX**

On or about May 29, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
and
NGUYEN TU DOAN,

8

did unlawfully obstruct, delay and affect, and attempt to
obstruct, delay and affect commerce, as that term is defined in
Title 18, United States Code, Section 1951(b)(3), and the
movement of articles and commodities in such commerce, by
robbery, as that term is defined in Title 18, United States Code,
Section 1951(b)(1), in that the aforementioned defendants did
unlawfully take and obtain personal property consisting of
jewelry and United States currency with a value exceeding $12,000
from employees of the Shanghai Buffet Restaurant, Tampa, Florida,
against their will by means of actual and threatened force,
violence, and fear of injury in violation of Title 18, United
States Code, Section 1951(a).

### RACKETEERING ACT SEVEN

The defendants CONGHAU HUU TO, a/k/a "Tigo"; and NGUYEN TU
DOAN, named below committed the following acts, any one of which
alone constitutes the commission of Racketeering Act Seven:

Racketeering Act 7(a)

On or about May 31, 1994, in the Middle District of Florida,
the defendants,

> CONGHAU HUU TO,
> a/k/a "Tigo";
> and
> NGUYEN TU DOAN,

did knowingly, willfully, and with premeditation, unlawfully
attempt to kill a human being, that is An Thanh Le, with the
intent to prevent the communication by the said An Thanh Le to a
law enforcement officer, information relating to the commission

9

of a federal offense in violation of Title 18, United States Code, Sections 1512(a)(1)(C) and 2.

Racketeering Act 7(b)

On or about May 31, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
and
NGUYEN TU DOAN,

did knowingly, willfully, and with premeditation, unlawfully attempt to kill a human being, that is An Thanh Le, in violation of Florida Statutes 782.04(1)(a)1 and 777.011.

All in violation of Title 18, United States Code, Section 1962(c).

## COUNT TWO

1.     The allegations of paragraphs 1 through 4, inclusive of Count One, are repeated and realleged herein as if fully set forth at length.

2.     From at least as early as March 1993, and continuing up to and including June 1994, in the Middle District of Florida and elsewhere, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TAI TAN PHAM,
a/k/a "Cao";

10

THANH LUONG,
a/k/a Luong Thanh Liem;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

being persons employed by and associated with the enterprise
described in paragraph 4 of Count One of this Indictment, which
was engaged in and the activities of which affected interstate
commerce, knowingly, willfully and unlawfully  did combine
conspire, confederate and agree together, and with each other,
and with other persons to the Grand Jury, both known and unknown,
to violate Title 18, United States Code, Section 1962(c), that
is, to conduct and participate, directly and indirectly, in the
conduct of the affairs of such enterprise through a pattern of
racketeering activity as defined by Title 18, United States Code,
Section 1961(1) and (5), namely, multiple acts indictable under
Title 18, United States Code, Section 1951(a) that is
interference with commerce by robbery, and conspiracy to do so,
and acts involving robbery and murder in violation of Title 18,
United States Code, Section 1512(a)(1)(c) and Florida Statutes
777.04(3), 782.04(1)(a)2d, 812.135 and 777.011.

    3.  It was part of said conspiracy that each defendant
agreed that two or more acts of racketeering would be committed
in the conduct of the affairs of the enterprise.

11

4.   It was further a part of said conspiracy that the defendants would and did "case" certain persons and businesses known to them to generate large quantities of United States currency, as part of a plan and scheme to commit armed robberies of these persons and businesses.

5.   It was further a part of the conspiracy that the defendants would recruit juvenile runaways to join the enterprise believing that the juveniles would face lesser criminal penalties if apprehended by law enforcement authorities.

6.   It was further a part of the conspiracy that the defendants did steal motor vehicles prior to committing armed robberies in order to provide a means of escape from the scene of the robbery.

7.   It was further a part of said conspiracy that the defendants did disguise their identities by the use of nylon stocking masks and cloth bandannas and did wear gloves to prevent leaving latent fingerprints during the course of the armed robberies.

8.   It was further part of the conspiracy that the defendants would and did carry firearms consisting of handguns and shotguns, and did tie victims of the aforementioned robberies with flexcuffs and duct tape.

12

9.    It was further a part of the conspiracy that the defendants agreed to murder An Thanh Le, with the intent to prevent the said An Thanh Le from communicating information to law enforcement authorities regarding the commission of a federal offense.

All in violation of Title 18, United States Code, Section 1962(d).

# COUNT THREE

From at least as early as March 1993, and continuing up to and including June 1994, in the Middle District of Florida, and elsewhere, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TAI TAN PHAM,
a/k/a "Cao";
LIEM THANH LUONG,
a/k/a Luong Thanh Liem;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

did knowingly, willfully and unlawfully combine, conspire, confederate, and agree together and with each other and with other persons, both known and unknown to the Grand Jury, to unlawfully obstruct, delay and affect commerce as that term is

13

defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the defendants did unlawfully agree to take and obtain personal property consisting of jewelry and United States currency by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Section 1951(a).

# COUNT FOUR

On or about April 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo"
TUAN DUC PHUNG;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

together with others not indicted herein, did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully attempt to take and obtain personal property consisting of United States currency from an employee of the Big Easy Restaurant, Tampa Bay Mall,

14

Tampa, Florida, against his will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

# COUNT FIVE

On or about May 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo"
and
TUNG VAN NGUYEN,
a/k/a "Tony",

together with others not indicted herein, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully take and obtain personal property consisting of United States currency with a value exceeding $8,000 from an employee of Southland Corporation, Tampa, Florida, against his will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

15

# COUNT SIX

On or about May 29, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TAI TAN PHAM,
a/k/a "Cao";
LIEM THANH LUONG,
a/k/a Luong Thanh Liem;
TUNG VAN NGUYEN,
a/k/a "Tony";
and
NGUYEN TU DOAN,

together with others not indicted herein, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully take and obtain personal property consisting of jewelry and United States currency with a value exceeding $12,000 from employees of the Shanghai Buffet Restaurant, Tampa, Florida, against their will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

16

# COUNT SEVEN

On or about April 23, 1994, in the Middle District of Florida, the defendant,

CONGHAU HUU TO,
a/k/a "Tigo"
TUAN DUC PHUNG;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

together with others not indicted herein, knowingly used and carried firearms, that is, handguns and a shotgun, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, interference with commerce by threats and violence as alleged in Count Four of the Indictment which is incorporated herein by reference as if set forth at length.

All in violation of Title 18, United States Code, Section 924(c)(1) and 2.

# COUNT EIGHT

On or about May 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo"
and
TUNG VAN NGUYEN,
a/k/a "Tony",

together with others not indicted herein, knowingly used and carried firearms, that is, handguns, during and in relation to a

17

crime of violence for which they may be prosecuted in a court of the United States, that is, interference with commerce by threats and violence as alleged in Count Five of the Indictment which is incorporated herein by reference as if set forth at length.

All in violation of Title 18, United States Code, Section 924(c)(1) and 2.

## COUNT NINE

On or about May 29, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,<br>
a/k/a "Tigo"<br>
LAP VAN LE,<br>
a/k/a "Lai Van Le",<br>
a/k/a "Luu Van Le",<br>
a/k/a "Johnny";<br>
TUAN DUC PHUNG;<br>
and<br>
NGUYEN TU DOAN,

together with others not indicted herein, knowingly used and carried firearms, that is, handguns, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, interference with commerce by threats and violence as alleged in Count Six of the Indictment which is incorporated herein by reference as if set forth at length.

All in violation of Title 18, United States Code, Section 924(c)(1) and 2.

A TRUE BILL

_____
FOREPERSON

CHARLES R. WILSON
UNITED STATES ATTORNEY

By: _____
JULIE F. THOMAS
Assistant U. S. Attorney
USA No. 44

_____
KEVIN R. MARCH
Assistant U. S. Attorney
Chief, Strike Force Unit
USA No. 23

1

1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                          TAMPA DIVISION

3   ---------------------------------
    UNITED STATES OF AMERICA,          No. 94-293-CR-T-17(E)
4
          Plaintiff,
5
          -vs-
6
    CONGHAU HUU TO,
7
          Defendant.                   Tampa, Florida
8   ---------------------------------  July 16, 1996

9

10                          SENTENCING
         BEFORE THE HONORABLE THOMAS A. WISEMAN,
11            Senior United States District Judge

12

13   APPEARANCES:

14   For the Government:          JULIE THOMAS
                                  Assistant United States Attorney
15                                500 Zack Street
                                  Tampa, Florida   33602
16                                (813) 274-6000

17
     For the Defendant:          DANIEL CASTILLO, ESQUIRE
18                                607 W. Martin Luther King Blvd.
                                  Tampa, Florida   33603
19                                (813) 238-8580

20
     Reported by:                MICHAEL J. CANO, RPR
21                                Frecka & Associates
                                  P.O. Box 1921
22                                Tampa, Florida   33601-1921
                                  (813) 221-4132

23

24

25



2

1              P R O C E E D I N G S

2              (Court called to order at 2:40 p.m.)

3              THE COURT:  All right.  The next matter set for

4    hearing is United States versus Conghau Huu To.

5              Is the government ready?

6              MS. THOMAS:  Yes, Your Honor.

7              THE COURT:  Is the defendant ready?

8              MR. CASTILLO:  Yes, Your Honor.

9              THE COURT:  Mr. Castillo, have you had an

10   opportunity to go over the presentence report with the

11   defendant?

12             MR. CASTILLO:  Yes, Your Honor.

13             THE COURT:  Mr. To, have you thoroughly read and

14   understand the presentence report?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  All right.  All right then,

17   Mr. Castillo, I'll hear you on your objections.

18             MR. CASTILLO:  Your Honor, some of them overlap.

19   I guess the first and foremost, the most important one that

20   I see is the accountability of Mr. To for the murder of

21   Con Quoc Le.  The probation office has scored him with a

22   base level of 43 finding him responsible under a

23   first-degree-murder theory of the murder of Con Quoc Le.

24             The Court's already ruled somewhat on this issue

25   as it related to Tam Minh Le, who was the actual shooter of

3

1  Con Quoc Le, as to the April 23rd Saigon Palace incident.

2          The Court will recall Mr. To, although he's, as

3  the jury found, the ring leader or one of the orchestrators

4  of this conspiracy to commit a robbery of Mr. Con Quoc Le,

5  he was across the street in the Saigon Palace when the

6  victim was killed.

7          Now, there's been some dispute as to what the

8  state of mind of Mr. Tam Minh Le was when he actually shot

9  Con Le.  And under the Pinkerton Theory in aiding and

10 abetting, we recognize that Mr. To may be held accountable

11 for the acts of coconspirators for reasonably foreseeable

12 acts.

13         Now, as the jury so found, there was a conspiracy

14 to commit a robbery of Mr. Con Quoc Le, and in light of the

15 sequence of events that occurred that night, I mean, first

16 of all, the victim that night was not robbed of the money

17 that was in his possession.  He was found with some $700,

18 and there was a contention that Mr. Tam Minh Le had bad

19 blood and it was separate and apart from any conspiracy.

20         But the point is, Judge, is Mr. To responsible for

21 the shooting of Con Le as it related to the robbery?  In

22 other words, is it a foreseeable act, kind of like the same

23 reasoning that the other attorneys argued for their clients

24 as it related to the abduction of the Lin family?  Is

25 that -- was that abduction or was the shooting of Con Le a

4

1   reasonably foreseeable act of a conspiracy to commit

2   robbery?  There was no talk of killing anyone during the

3   conspiratorial conversations.  It was something that had

4   happened that night.  Now, the question is, is it reasonably

5   foreseeable?  That's one question.

6          The second one, is it a first-degree murder, which

7   would allow the application of 2A1.1?  I point out to the

8   Court that the two issues to resolve based upon the facts of

9   the case, is Mr. To liable?  And if the Court says it's not

10  a reasonably foreseeable act, the murder of Con Le, then

11  Mr. To, under that count, would be liable for the conspiracy

12  to commit robbery, which is a base level 20 which would be

13  enhanced to 27.  That's one alternative the Court has based

14  upon its findings.

15         I don't need to belabor the facts.  The Court is

16  well aware of the facts.  Alternatively, Judge, as it

17  relates to Mr. To, the Court can also find that maybe it's a

18  foreseeable consequence of his acts, but was it in fact a

19  first-degree murder as it relates to Mr. To?

20         Conceivably the Court can say, Well, based upon

21  the intent of the defendant, was it knowingly and willfully

22  committed?  Unfortunately -- well, as I've heard already the

23  Court's already made a finding as to Mr. Tam Minh Le, which

24  is as to that defendant, but Mr. To, is he -- should he be

25  accountable for a second-degree murder, which would be a

5

1   level 33, and subject to the according enhancements?

2           I submit to the Court, Judge, that obviously it's

3   way beyond -- it's outside the scope of this conspiracy to

4   commit a robbery of Con Le.  The murder was an unfortunate,

5   unforeseeable act as it relates to Mr. To.  This was

6   something that Mr. Tam Minh Le did off on a frolic of his

7   own, so to speak.  I mean, it wasn't contemplated by the

8   conspiracy.  It was an unfortunate occurrence that occurred.

9   No one can dispute the death, but the question remains, what

10  was the state of mind of Mr. Tam Minh Le at the time of the

11  killing?  And whether or not Mister -- was that killing a

12  foreseeable act as to that conspiracy to commit robbery?

13          Shall I go on or do you want to let the government

14  respond?

15          THE COURT:  Well, you may continue.

16          MR. CASTILLO:  Okay.  Secondly, Judge, obviously

17  we have --

18          THE COURT:  I'll address that.  I'm prepared to

19  address that at any point.  That's all you have to say about

20  that?

21          MR. CASTILLO:  Right.

22          THE COURT:  Let me just say this, Mr. Castillo.

23  We have both the Felony Murder Rule and the 18 United States

24  Code, Section 2, that which could be done by a person

25  himself can also be done by a principal.  We have Pinkerton

6

1  liability under the conspiracy theory.

2        Now, it seems logical to this Court that if you

3  arm -- and this is -- these are determined facts by the

4  jury's verdict -- if you plot a felony and you place weapons

5  in the hands of your subordinates and coconspirators and a

6  murder results, a shooting results, it seems to me that is

7  entirely foreseeable.

8        It's further corroborated by the fact that three

9  individuals, I believe, fired shots at Mr. Con Quoc Le.  Two

10  of them hit him before Mr. Tam Minh Le finished him off.

11  The circumstances of this armed robbery, which resulted in a

12  murder, were entirely foreseeable and Mr. To is fully

13  responsible for the consequences of the circumstances which

14  he set in motion.

15        As to the degree, whether it be first or second,

16  again, Felony Murder Rule would make it first-degree murder.

17  But Mr. To has indicated by his actions, not only in this

18  instance but in others as well, including the attempted

19  murder of An Le, that he has no hesitation to take the life

20  of another person.

21        And from all the facts and circumstances of this

22  case, Mr. To is more responsible, frankly, than

23  Mr. Tam Minh Le for the death of Con Quoc Le.

24  Mr. Tam Minh Le is a retarded individual with emotional

25  problems.  Mr. To is a calculating, intelligent individual

7

1   and he knew what he was doing when he did it.

2           So that your application for a different guideline

3   will be denied.

4           MR. CASTILLO:  Very well, Your Honor.  So then the

5   probation office's calculation would be --

6           THE COURT:  Calculation of 43 points for the base

7   offense level will be adopted by the Court.

8           MR. CASTILLO:  Well, Judge, then the next

9   objection that I have for the Court's consideration is a

10  two-level enhancement for obstruction of justice.  This has

11  to do with the September 22nd, 1994 beating of An Le in a

12  holding cell.

13          THE COURT:  Now, the only thing I got about that

14  was a report -- I believe I had a report during the trial

15  from the Marshal's Service.  Maybe you better put some proof

16  on about that, Ms. -- as to whether or not Mr. To was the

17  one who did it and whether or not it was in fact an act of

18  intimidation of a witness.

19          MS. THOMAS:  Your Honor, there was testimony at

20  trial by Dung Quoc Nguyen about witnessing that beating.  It

21  wasn't just a report.  I believe we had submitted --

22          THE COURT:  Remind me of that testimony.  You all

23  have the advantage.  The Court is not provided a copy of the

24  transcript unless you cite it to me and cite me the page

25  numbers.

8

1          MS. THOMAS:  Your Honor, Dung Quoc Nguyen
2 testified he was in a holding cell downstairs along with all
3 of the other co-defendants.  And I believe he described at
4 trial how they were all chained together in different rows.
5 An Le was next to him.  He testified that Lap Van Le
6 originally elbowed An Thanh Le.  An Thanh Le fell to the
7 ground.  Mr. To also struck An Le, and the statement was
8 made to Dung Quoc Nguyen, You didn't see anything.  I have
9 to refer to the trial transcript and I can get you that
10 citation.
11          THE COURT:  Well, let's see if Mr. Castillo agrees
12 that that occurred.
13          MR. CASTILLO:  I agree that's what the testimony
14 was of Mister -- of Dung Quoc Nguyen.  However, Judge,
15 again, there's no -- I mean, let's just assume for a minute
16 that the beating did occur, that Mr. To did in fact strike
17 him.  There's no indication even from her reciting of her
18 recollection of the testimony that it was, You better not
19 testify.  You better change your testimony, or anything to
20 that effect.
21          We don't know why this beating occurred.
22 Mr. An Le did not testify.  There's no indication that
23 Mr. An Le did not testify because he was threatened by
24 anyone.  Here we're getting a two-level
25 obstruction-of-justice enhancement for a battery that

9

1   occurred outside the scope of the indictment, prior to

2   trial.

3          They were all in the holding cell, and let's say

4   he was assaulted and said, You didn't see anything.  That

5   doesn't mean it's obstruction of justice.  But what does

6   that mean?  Assuming that we have to take the testimony as

7   given by this witness, what does that mean?  Is that an

8   obstruction of justice?  And I would submit that it doesn't

9   rise to the level of a two-level enhancement.

10          THE COURT:  All right, sir.  Let me hear you on

11  that, Ms. Thomas.

12          MS. THOMAS:  Your Honor, the obstructive

13  behavior -- let me just flip to the particular guideline,

14  Your Honor.

15          THE COURT:  Obstruction of justice should have

16  some evidence that the motivation for this attack was to

17  prevent his testimony or in some way try to change his

18  testimony.

19          MS. THOMAS:  That's correct, Your Honor.

20          THE COURT:  You know, he was mad enough to try to

21  kill him once when he thought he was cooperating with the

22  FBI.  But is this not piling an inference on an inference

23  Ms. --

24          MS. THOMAS:  I don't think so, Your Honor,

25  especially in light of some of the other documentation that

10

1   we all received during the course of this trial.

2          THE COURT:  And that's the --

3          MS. THOMAS:  Those are the letters that were

4   attributed to Mr. To that -- or the threats attributed to

5   Mr. To in letters by An Le to Nguyen Tu Doan as well as the

6   actual fight that broke out between the defendants in this

7   case.

8          After the -- after the testimony of Nguyen Tu

9   Doan, if Your Honor will recall, there was an incident in

10  the sally port of the Morgan Street jail, I believe that was

11  the report that Your Honor was referring to, and Mr. An Le

12  was the individual both assaulted prior to the indictment,

13  which formed a basis for one of the predicate acts, as well

14  as he's assaulted in a holding cell after a court hearing.

15         And keeping in mind that An Le was the only

16  individual that for a short period of time was let out on

17  bond, Mr. To, you know, clearly believed Mr. An Le was going

18  to be a witness against him at trial.

19         THE COURT:  I think it's -- you know, I'm

20  accepting as true the fact that he was assaulted in jail and

21  assaulted by Mr. To.  I think it's fairly obvious they don't

22  like each other.  But to say that that rises to the level of

23  obstruction of justice, Ms. -- without more is inference

24  upon inference.

25         MS. THOMAS:  Your Honor, I accede to your ruling,

11

1    obviously.  We don't have more to give the Court.

2           THE COURT:  Well, you know, several of these

3    witnesses were scared of Mr. To, that was obvious at trial.

4    Mr. Doan, Mr. Tran, and probably with good reason.  But I'll

5    reserve that.

6           Go ahead now and let me hear you on the rest of

7    your objections, Mr. Castillo.

8           MR. CASTILLO:  All right, Judge, that objection --

9    because Mr. To was convicted of all nine counts and there's

10   four separate groupings and that enhancement is on each

11   group, obviously we're at a level 43 and that objection

12   would apply to all of them.

13          Judge, I would also -- well, as far as the one

14   count of the 924(c) that you ruled this morning on Bailey,

15   that objection, I guess, would also be overruled?

16          THE COURT:  That is -- that is noted for the

17   record and you need not reiterate it.  But I will await the

18   judgment of the Eleventh Circuit as to whether or not Bailey

19   also deleted 18 United States Code, Section 2, from the

20   books, and I don't think it did.

21          Now, go ahead.

22          MR. CASTILLO:  All right, Judge.  And then also

23   just with relation to Mr. To's May 31st, 1996, probation

24   revocation hearing, he was assigned three points for --

25   Criminal History Points for a probation violation hearing

12

1   which, as the Court will recall, Mr. To was on probation for

2   being a felon in possession of a firearm during the course

3   of the trial.   Recently what happened was he was taken to

4   state court and ordered to terminate his probation because

5   of the federal proceeding because this indictment and

6   conviction was the basis for that violation.

7          We went before the trial judge, and what the trial

8   judge did there was defer to the federal court, in essence

9   give Mr. To a time-served sentence.   Technically Mr. To did

10  not have a day of credit for that violation of probation

11  because he had not been served with a warrant, the arrest

12  warrant.

13         But after of the trial court heard that Mr. To had

14  been detained since December 22nd of 1994 and been in

15  custody, that he has been convicted and was facing

16  substantial time here in the federal courts, the trial court

17  in essence what they did was defer to the federal court and

18  said, Well, then what we'll do is give him credit for time

19  served, and gave him credit for 525 days, which was the

20  calculation he had from December 22nd, 1994, to May 31st of

21  1996, and said, We'll sentence you to that.

22         Well, he was already enhanced two levels or two

23  points for -- two criminal history points for being on

24  probation.   On top of that, he's then given an additional

25  three points for the same revocation on the same charge, and

1  what I think that is is overrepresentative of his Criminal

2  History Category, of his criminal history, and it amounts to

3  double counting.

4        And I would submit to the Court that instead of

5  the Category V that the probation office has, that it should

6  be reflected to go down to Category III, remove those five

7  points and then he's placed in a Category III, and I think

8  now we're about a level 46, Category III. I don't know

9  that -- well, it doesn't make a difference, but that's my

10  objection to the criminal history points.

11        In essence, it's a discretion of the Court now to

12  determine whether or not it's overrepresentative, although

13  it may be properly scored by the probation office, but the

14  Court can look at it and say, Wait, there's something wrong

15  here. It's double counting and it is overrepresentative of

16  his criminal history.

17        THE COURT: You agree that it does not make a

18  difference in the sentence to be imposed?

19        MR. CASTILLO: Not as the Court's ruling. Now,

20  obviously should you be reversed on that ruling, then it may

21  have an affect later on. But accepting everything --

22        THE COURT: Let me hear you, Ms. Thomas, on that

23  matter.

24        MS. THOMAS: Your Honor, as I understand it,

25  Mr. Castillo is indicating that the probation office has

14

1  correctly scored Mr. To's criminal history category; is that

2  correct?

3      ᵢₑfᵢ     MR. CASTILLO:  Yes.

4    ᵥₕᵢₗₑ     MS. THOMAS:  But he is arguing that it is

5  overrepresentative --

6    ᵤₙᵈₑᵣ     THE COURT:  Well, I think he also is objecting to

7  the three points added for revocation of his probation for

8  which he's already received two points for the probation

9  itself.

10     ₐₜ      MS. THOMAS:  Well, Your Honor, I think --

11            THE COURT:  And this all occurred -- and the

12  revocation of probation is this offense.

13    ᵢₑₙ      MS. THOMAS:  Correct, Your Honor.

14    ᵣₙₑ      THE COURT:  As a result of this offense.

15            MS. THOMAS:  Well, Your Honor, the two are

16  separate.  I support the probation officer's calculation.

17  The two are separate.  The guidelines indicate that if you

18  commit an offense while under some kind of a rehabilitative

19  sentence, you're assessed two levels.

20            He -- because of the instant indictment and not

21  just the indictment, his conviction on that indictment, he

22  was take -- he faced in state court a probation revocation

23  on the four-year probationary sentence he received for

24  possession of a firearm by a convicted felon.  They gave him

25  the 525 days.

15

1      THE COURT:  Twenty-five, or 545 days --

2      MS. THOMAS:  Twenty-five days, 525 days in

3  confinement, which in essence is what he had served here

4  while awaiting trial.  They then properly count the fact

5  that that 525 days is considered his sentence on the

6  underlying offense.  So the probation office has correctly

7  scored Mr. To's criminal history on that offense.  It is a

8  separate issue whether the Court feels that the Criminal

9  History Category of V overrepresents Mr. To's criminal

10  history.

11      We would assert that it does not overrepresent his

12  criminal history, because obviously the criminal history

13  calculations are inteded to give the Court guidance in

14  determining what, among other things, what Mr. To's

15  likelihood of recidivism is in this case.  And, you know, he

16  has a substantial criminal history, and not unlike others

17  who have a Criminal History of V.  We have a possession of

18  cocaine offense, an armed robbery offense, a grand larceny

19  offense, and then possession of a firearm by a convicted

20  felon.  And these are unrelated to the conduct here.

21      THE COURT:  All right.

22      Now then, Mr. Castillo, do you have further

23  objections?

24      MR. CASTILLO:  My objection on Paragraph 9, Judge,

25  having to do with the 5K2.0 not being calculated by the

16

1  guidelines, when I filed that what I contemplated was the

2  actions taken on April 24th.  So I would just merge that

3  with the other argument and that's why I cited that as far

4  as not contemplated by the guidelines.  But there is a

5  application note which the Court has ruled on.

6            And in light of that, I have -- the other argument

7  that I would advance to the Court obviously is the

8  three-level enhancement for role in the offense, but I think

9  the Court has made its findings this morning that Mr. To is

10 in fact --

11           THE COURT:  In a leadership role.

12           MR. CASTILLO:  -- in a leadership role.  So in

13 light of that I have nothing further.

14           THE COURT:  Ms. Thomas, do you wish to be heard

15 further on any of these objections?

16           MS. THOMAS:  No, Your Honor, I do not.

17           THE COURT:  All right.  Then the Court will rule

18 on the objections.  I think I've fully discussed the

19 accountability of Mr. To for the murder of Con Quoc Le and

20 that 43 is the appropriate level under 2A1.1.

21           His role in the offense is that of leadership and

22 the three-level enhancement is appropriate.

23           You object -- you didn't address this,

24 Mr. Castillo, but do you object to the three-level

25 enhancement for five or more --

1    MR. CASTILLO:  Well, that was the last thing I

2  said.

3    THE COURT:  Oh, all right.  The conspiracy

4  consisted of more than five or more persons, so that

5  objection is overruled.

6    Then the two-level enhancement for obstruction of

7  justice, that may have been the motivation for the attack in

8  the jail, but the proof that that was the motivation is

9  lacking.  So I'm going to sustain the objection to that.

10    And as to the probation revocation of points,

11  those three points were actually assessed for the prior --

12  for the prior conviction of possession of a firearm by a

13  convicted felon, and the two points were because he was on

14  probation at the time of the commission of this offense.  So

15  that's appropriately calculated by the probation office and

16  it does not overrepresent the criminal history.

17    So the Court determines that the offense level's

18  46, the Criminal History Category is V, the sentencing range

19  is life in prison.

20    What's the fine range?

21    THE PROBATION OFFICER:  It remains the same,

22  Your Honor, 25,000 to 250,000.

23    THE COURT:  Fine range is 25,000 to 250,000.  And

24  supervised release is -- well, there are some mandatory

25  minimums also.  There's consecutive sentences, the life

18

1   imprisonment is as to Counts 1 and 2.  There are mandatory

2   consecutive sentences required in this case as well.

3          As to Counts 3, 4, 5, and 6, the guideline on that

4   is 20 years.

5          Is that a mandatory minimum?

6          MR. CASTILLO:  No.  I think that's a statutory

7   maximum, Judge.

8          MR. THOMAS:  That's a statutory maximum.

9          THE COURT:  What's the guideline on it?

10          MS. THOMAS:  Well, since he's at a level 43, it

11   would be 20 years.

12          THE COURT:  All right.  Then as to Counts 3, 4, 5,

13   and 6, the guideline requires 240 months, which can be

14   concurrent with the life sentence.

15          As to Count 7, a five-year consecutive mandatory

16   is required.

17          As to Count 8, a 20-year consecutive is required.

18          As to Count 9, a 20-year consecutive is required.

19          Now, then, I'll hear you, Mr. Castillo.

20          Special assessment of $450 is also required.  And

21   dividing up the restitution, $8,700 should be paid to the

22   Lins.

23          Are there other victims to whom restitution is

24   required to be made?

25          MS. THOMAS:  Your Honor, the probation office has

19

1  indicated that restitution in the amount of $3,563.21 as

2  Mr. To's portion is owed to the Southland Corporation, that

3  would be to 7-11.

4          THE COURT:  That's the bank, the Barnett Bank?

5          MS. THOMAS:  The Barnett Bank drive-thru incident,

6  and then $5,164.21 to the Lins.

7          THE COURT:  All right.  Those amounts will be

8  ordered.

9          MR. CASTILLO:  Judge, I would just add in light of

10  the financial condition of the defendant, I would ask the

11  Court to waive fines of cost of supervision.

12          THE COURT:  I will do that, yes.

13          Let me hear you further with anything else you

14  would like to say.

15          MR. CASTILLO:  No, Your Honor, I was going to

16  check with my client to see if he would like to say

17  anything.

18          THE COURT:  Yes, see if he would like to say

19  anything on his own behalf.

20          MR. CASTILLO:  Your Honor, I have nothing further

21  to add in light of the Court's ruling over previous

22  objections, and Mr. To has indicated he doesn't wish to

23  address the Court.

24          THE COURT:  Is there a victim in the courtroom?

25          MS. THOMAS:  No, Your Honor.

1        MR. CASTILLO:  This is Mr. To's family,

2   Your Honor.

3        THE COURT:  I understand.  Would they like to be

4   heard?

5        MR. BRUCE TO:  Yes, Your Honor.  May we approach

6   the podium?

7        THE COURT:  Come around.

8        MR. CASTILLO:  Your Honor, I would like to

9   introduce Mr. Bruce To, who is the defendant's brother.

10       THE COURT:  Older or younger, Mr. To?

11       MR. BRUCE TO:  Younger, sir.  Thank you for giving

12  me the opportunity to address the Court, yourself, and the

13  prosecutors.  I just wanted to introduce my mother, my

14  father, my sister-in-law, and my youngest sister.

15       With all due respect to you and the prosecutors, I

16  would like to ask several questions on behalf of my family.

17  Conghau To, my brother, was working for and helping the

18  government and the FBI.  Why is he being punished the most?

19  That's my first question.

20       My second question was, from reading the

21  transcripts, there was no evidence linking my brother to any

22  crimes.  Why is he being punished again?  Is it because of

23  what the other convicted criminals testified after they

24  found out that my brother was helping the government and the

25  FBI?

1   I've heard your sentences and understand them.

2   There's nothing we can do financially and all we ask you to

3   do is to review the case and transcripts much more

4   thoroughly to see there are many inconsistencies with the

5   prosecuting witnesses and conspiracy among the other

6   defendants.

7         That's all I have to say.

8         THE COURT:  Would any of the other members of the

9   family wish to say anything?

10        Ms. To?

11        MS. NGUYEN:  Thank you for letting me talk today.

12        MR. CASTILLO:  Your Honor, this is Con Nguyen.

13        THE COURT:  Yes.  She came to this country very

14  tragically and had some very traumatic experiences.

15        MS. NGUYEN:  I'm very hurt to come here and see my

16  son over there, and very hurt because I'm his mother and not

17  doing my job to protect him and to help him.  But the only

18  thing today I want to talk to him that the last time he

19  knows that I was right because when he asked me my opinion

20  to help the government I told him, In your situation if you

21  do that, like you play with fire, anyway you get hurt.  And

22  now he get hurt.

23        Thank you very much.

24        MR. CASTILLO:  This is Ms. Amanda To.

25        THE COURT:  Yes, sir.  I know Ms. To.

22

1          MS. AMANDA TO:  I testified.  I just wanted to say

2    if I felt my husband was guilty through all of this I would

3    never have stayed with him.  I am a law-abiding citizen and

4    I don't believe he's guilty of this.  I don't believe he

5    forced anybody to commit any crimes.  Nobody could pay me a

6    million to commit a crime.  These people chose to do what

7    they did.  Retarded or not retarded, the boy was retarded,

8    he made his way to the restaurant, he made his way to order

9    the beer, he made his way to possess the gun.  I do not

10   believe that my husband forced anybody to do anything.  I

11   think that's just an excuse.

12          I would say what I had to say, too, to get a

13   lesser sentence.  I just want you to know I would not be

14   here.  I obey the law, I always have, and I love my husband

15   and I don't feel he's guilty.  I know he was convicted, but

16   I don't feel he's guilty.  I don't think he should take the

17   wrap for all that these guys did just because they pointed

18   the finger at him.

19          He was in a very sticky situation trying to help

20   the FBI, trying to be a husband, the whole situation.  He

21   just fell apart.  It just wasn't a fair situation and he was

22   burnt in the end.  I don't feel like he should take the wrap

23   for everybody.  I just wanted to say to everybody in the

24   courtroom thank you for hearing me, but I do believe my

25   husband is innocent.

23

1          THE COURT:  All right.

2          MS. TO:  I'm Mr. To's youngest sister.  My family

3    protected me from this whole case, so I don't know every

4    single detail of it.  But from the things I've heard, my

5    brother is some kind of monster, some kind of conniving gang

6    leader, I don't know what.  My brother -- he's my big

7    brother and he's also my -- we didn't have -- I mean, my

8    father wasn't around, so he was my father also.  He had to

9    play double roles.

10          My brother's a human being.  He has a family that

11    loves him very much.  This is not a monster.  He's not -- I

12    don't know what I can say.  I don't know what else I can

13    say.

14          THE COURT:  Thank you.

15          MR. BRUCE TO:  Your Honor, can I say something

16    else?

17          THE COURT:  Yes.

18          MR. BRUCE TO:  I ask if you can reconsider your

19    sentence.

20          THE COURT:  I'm sorry?

21          MR. BRUCE TO:  I'm asking to see if you can

22    reconsider your sentencing for my brother.

23          THE COURT:  All right.  Ladies and gentlemen, I

24    certainly appreciate the love that you bear for your brother

25    and son and husband, and I appreciate family loyalty.  It's

24

1   the very foundation of society.

2       However, sometimes family loyalty can blind one to

3   the truth.   Your husband, son, brother committed some very

4   serious crimes and did some serious injury to a lot of

5   people, and now he has to pay the price.   That's a hard fact

6   for you to have to live with, it's a hard fact for him to

7   have to live with, but it has happened and we cannot erase

8   the past.

9       There's hope that he may become rehabilitated.   At

10  some point in his service of the sentence that I have to

11  impose he may be eligible for release.   But at this time it

12  is my responsibility to impose upon him a life sentence plus

13  a number of years.   He may never be released.   He may still

14  be able to make a contribution while in the penitentiary and

15  certainly you can maintain a relationship with him.   But he

16  has to pay for his crimes, and he committed some very

17  serious crimes in the belief of the jury and in the belief

18  of this Court, and I heard every word of the testimony.

19          So thank you very much.   You may be excused.

20          Come around here, Mr. To.   Is there any reason why

21  sentence should not be imposed at this time?

22          MR. CASTILLO:   No legal reason, Your Honor.

23          THE COURT:   All right.   Mr. To, upon the verdict

24  of the jury finding you guilty of Counts 1, 2, 3, 4, 5, 6,

25  7, 8, and 9, the Court finds you guilty.

25

        On Counts 1 and 2, you are committed to the Bureau

of Prisons for the remainder of your natural life, each

sentence to run concurrently.

        On Counts 3, 4, 5, and 6, you are sentenced on

each of those counts to 240 months to run concurrently with

the sentences imposed in Counts 1 and 2.

        On Count 7, the Court is required to impose a

five-year sentence consecutive to those imposed to Counts 1

and 2.

        On Count 8 and Count 9, the Court is also required

by law to impose a 20-year consecutive sentence on each of

those counts consecutive to each other and consecutive to

the sentences imposed in Counts 1 and 2.

        So in total, you are sentenced to life imprison

plus forty-five years consecutive thereto.  Fine is waived,

cost of incarceration is waived, $450 special assessment is

imposed.

        Now then, the Court advises you of your rights of

appeal.  You have a right to appeal your conviction.  You

have a right to appeal your sentence.  If you wish to

appeal, you must file an appeal by July 26.  If you are

unable to pay for a lawyer to represent you, the Court will

appoint a lawyer to represent you on your appeal.  If you

wish to file a notice of appeal, you may ask the Court --

courtroom deputy to file that notice of appeal on your

26

1  behalf and it will be done.

2            Now, let me ask you if you understand your rights,

3  Mr. To?

4            THE DEFENDANT:  Yes, I do.

5            THE COURT:  All right.  All right then, have I

6  omitted anything, Ms. Thomas?

7            MS. THOMAS:  Your Honor, I did not hear any

8  provision regarding restitution, and have you waived that?

9            THE COURT:  I did not.  I did order it earlier but

10 I will do it again.  The numbers are not in my -- are not at

11 my fingertips.  The amount owed to Barnett Bank on the

12 amount --

13           MR. CASTILLO:  To 7-11.

14           THE COURT:  -- and his portion to the Lins?

15           MS. THOMAS:  It would be $8,700.42.

16           THE COURT:  How much of that to the Lins?

17           MS. THOMAS:  $5,164.21.

18           THE COURT:  And how much of that to the Barnett

19 Bank?

20           MR. CASTILLO:  Southland Corporation.

21           MS. THOMAS:  Three thousand --

22           THE COURT:  Southland Corporation.

23           MS. THOMAS:  $3,563.21 to the Southland

24 Corporation.

25           THE COURT:  All right.  Those amounts will be

1  contained in the judgment order.

2          Now then, you have a request with respect to pla[
3  of incarceration?

4          MR. CASTILLO:  Yes, Your Honor.  If the Court
5  would consider recommending to the Bureau of Prisons that
6  the defendant be housed close to Tampa.  His family is her[
7  so they would have --

8          THE COURT:  He may get a level five.

9          MR. CASTILLO:  I understand, Judge.  But whateve[
10  recommendation -- somewhere close to Tampa, southeast.

11          THE COURT:  I'll recommend that he be incarcerat[
12  at the appropriate level determined by the Bureau of Priso[
13  at the nearest location to Tampa.

14          MR. CASTILLO:  Your Honor, the defendant has als[
15  indicated that he wants to invoke his right to appeal.  I
16  have been appointed and I would ask the Court to continue
17  appointment.

18          THE COURT:  Your appointment will continue to
19  conduct the appeal, and Ms. Thomas, you'll file the notice
20  of appeal on his behalf.

21          Is there anything further?

22          MR. CASTILLO:  No, Your Honor.

23          MS. THOMAS:  No, Your Honor.

24          THE COURT:  All right.  Mr. Marshal, he's in you[
25  custody.

The Court will be recessed until 9 o'clock

orrow morning.

THE COURT SECURITY OFFICER:  All rise.

(Court adjourned at 3:26 p.m.)


- - - - -


C E R T F I C A T E

I certify that the foregoing is a correct

nscript of the stenographic record of proceedings held in

above-entitled matter.

_____        8/1/96
                               _____

hael J. Cano, Court Reporter     Date

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONGHAU HUU TO,
            PETITIONER,

V.                                          NO: 94-293-CR-T-17-(E,

UNITED STATES OF AMERICA,
            RESPONDENT,

_____

MOTION UNDER 28 U.S.C 2255
(F)(3), MOTION FOR RESENTENCING
IN LIGHT OF NEW LAW BY THE U.S.
SUPREME COURT.

1

<u>INDEX</u>

1) COVER SHEET

2) STATEMENT OF CASE

3) MEMORANDUM OF POINT AND AUTHORITIES

4) 2255 (F)(3) AVENUE

5) RETROACTIVITY OF ALLEYNE

6) CONCLUSION

7) EXHIBIT A, INDICTMENT

8) EXHIBIT B, SENTENCING TRANSCRIPT

## MOTION UNDER 28 U.S.C 2255 (F)(3), MOTION FOR RESENTENCING IN LIGHT OF NEW LAW BY THE U.S. SUPREME COURT.

COMES NOW, CONGHAU HUU TO, APPEARING PRO-SE, RESPECTFULLY MOVES THIS HONORABLE COURT TO RESENTENCE PETITIONER. PETITIONER'S SENTENCE IS UNCONSTITUTIONAL AND UNJUST AS HE SUFFERS FROM A LIFE SENTENCE PLUS 45 YEARS CONSECUTIVE IN VIOLATION OF HIS DUE PROCESS AND HAS HAD THIS BURDEN OF AN UNCONSTITUTIONAL SENTENCE FOR ALMOST 20 YEARS.

PURSUANT TO THE U.S. SUPREME COURT'S DECISION IN ALLEYNE V. U.S 133 S. ct. 2151, 186 L. ed 314, THIS DISTRICT COURT AND THE GOVERNMENT HAD MISTAKEN AND ERRED IN A PROCEDURAL RULE THAT IMPLICATED FUNDAMENTAL CONSTITUTIONAL PROTECTION OF SIXTH AMENDMENT JURY-TRIAL RIGHTS SO MOVANT'S SIXTH AMENDMENT RIGHT WAS VIOLATED.

## STATEMENT OF THE CASE

A NINE COUNTS INDICTMENT WAS SERVED ON THE PETITIONER ON 12/21/94. 18 U.S.C 1962(c) AND (d), 18 U.S.C 1951(a), AND 18 U.S.C 924(c)

AFTER BEING FOUND GUILTY OF ALL NINE COUNTS

3

AT TRIAL, PETITIONER WAS SENTENCED ON 7/16/96
PETITIONER HAD RECEIVED TWO CONCURRENT LIFE
SENTENCES FOR COUNTS ONE AND TWO, 240
MONTHS TO SERVE CONCURRENTLY WITH THE LIFE
SENTENCES FOR COUNTS 3, 4, 5, AND 6. A 5
YEARS CONSECUTIVE SENTENCE FOR COUNT 7, AND
TWO CONSECUTIVE 20 YEARS SENTENCES FOR COUNTS
8 AND 9. THE JURY WAS INSTRUCTED AT DELIBERATION
THAT IF THE DEFENDANT WAS FOUND GUILTY OF
COUNTS 3, 4, 5, AND 6, THEY HAD TO FIND THE
DEFENDANT GUILTY OF COUNTS 7, 8, AND 9 OF THE
INDICTMENT.

AT SENTENCING, PETITIONER RECEIVED TWO
CONCURRENT LIFE SENTENCES WHICH THE PETITIONER
WAS NEVER CHARGED IN THE INDICTMENT; PAGE 16
OF THE SENTENCING TRANSCRIPT "THE COURT. ALL
RIGHT THEN, THE COURT WILL RULE ON THE OBJECTION
I THINK I'VE FULLY DISCUSSED THE ACCOUNTABILITY
OF MR. TO FOR THE MURDER OF CON QUOC LE AND
43 IS THE APPROPRIATE LEVEL UNDER 2A1.1. HIS
ROLE IN THE OFFENSE IS THAT OF LEADERSHIP
AND THE 3 LEVEL ENHANCEMENT IS APPROPRIATE."
PAGE 17-18 "THE COURT - THERE'S CONSECUTIVE
SENTENCES, THE LIFE IMPRISONMENT AS TO COUNT
1 AND 2."

THE COURT ERRED IN SENTENCING PETITIONER
TO A LIFE SENTENCE BY ENHANCING PETITIONER
UNDER 2A1.1, FEDERAL FIRST-DEGREE MURDER,
A STATUTE THAT DID NOT EXIST IN PETITIONER'S

INDICTMENT. ALSO A 5 YEARS AND TWO 20 YEARS CONSECUTIVE SENTENCES ON COUNTS 7, 8, AND 9 WHICH THE COURT INSTRUCTED THE JURY THAT IF THEY FIND THE PETITIONER GUILTY OF COUNTS 3, 4, 5, AND 6 OF THE INDICTMENT, THEY MUST ALSO FIND THE PETITIONER GUILTY OF COUNTS 7, 8, AND 9. THE COURT ERRED IN ENHANCING PETITIONER WITH 45 YEARS CONSECUTIVE, IN VIOLATION OF THE PETITIONER'S DUE PROCESS. PETITIONER ALSO RECEIVED ENHANCEMENTS FOR OBSTRUCTION OF JUSTICE AND LEADERSHIP ROLE WITHOUT A JURY'S DETERMINATION, ALL IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHT UNDER THE SIXTH AMENDMENT.

## MEMORANDUM OF POINTS AND AUTHORITIES

ON 6/17/13, THE U.S. SUPREME COURT DECLARED IN ALLEYNE V. U.S. 133 S. Ct. 2151, 186 L. Ed. 2d 314 OVERRULED HARRIS V. U.S 536 U.S. 545, 122 S. Ct. 2406 (2002), THAT ANY FACT THAT INCREASES A MANDATORY MINIMUM SENTENCE FOR A CRIME IS AN ACTUAL ELEMENT OF THE CRIME THAT MUST BE SEPARATELY SUBMITTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT. THE JURY'S DETERMINATION IS NECESSARY TO SATISFY A DEFENDANT'S RIGHT UNDER THE SIXTH AMENDMENT IN CONJUNCTION WITH THE DUE PROCESS CLAUSE. IN THIS CASE AS PROVEN WITH THE EXHIBITS OF PETITIONER'S INDICTMENT AND SENTENCING TRANSCRIPTS, IT CLEARLY

5

PROVES THAT HE WAS SENTENCED ILLEGALLY
UNDER A STATUTE THAT WAS NEVER SEEN BY A
JURY THAT WAS NOT IN HIS INDICTMENT THAT
RESULTED IN A LIFE SENTENCE AND MORE AS
WELL AS MULTIPLE ENHANCEMENTS THAT THE
JUDGE AND NOT THE JURY FOUND HIM GUILTY
FOR, IN VIOLATION OF HIS DUE PROCESS UNDER
THE SIXTH AMENDMENT.

   THE SUPREME COURT IN ALLEYNE EXTENDED
THE RULE OF APPRENDI V. NEW JERSEY 530 U.S.
466, 120 S. ct. 2348 (2000) RECOGNIZING THAT
ANY FACT WHICH INCREASES EITHER END OF THE
SENTENCING RANGE PRODUCES A NEW PENALTY AND
THEREFORE CONSTITUTES A PROVABLE INGREDIENT
OF THE OFFENSE, "FACTS THAT INCREASE THE
MANDATORY MINIMUM SENTENCE ARE THEREFORE
ELEMENTS THAT MUST BE SUBMITTED TO THE JURY
AND FOUND BEYOND A REASONABLE DOUBT". ALLEYNE
V. U.S. 133 S. ct. 2151, 2158, 186 L. ed 2d.
314 (2013).


   AVENUE UNDER 2255 (F)(3)


   28 U.S.C. 2255 (F)(3) PERMITS A FIRST
2255 MOTION TO BE CONSIDERED TIMELY, IF IT IS
FILED WITHIN ONE YEAR OF A SUPREME COURT'S
DECISION THAT CREATES A NEWLY RECOGNIZING
RIGHT MADE RETROACTIVELY APPLICABLE TO CASES
ON COLLATERAL REVIEW, 28 U.S.C. 2255 (F)(3).

IF THE CIRCUIT PRECEDENT WAS INCONSISTENT, WITH "THE LAW OF THE UNITED STATES OR IF THE OVERRULING OF CIRCUIT PRECEDENT IS A "FACT," THEN THE LIMITATION PERIOD BEGAN TO RUN WHEN "ALLEYNE" WAS DECIDED, SEE Mc QUIGGIN V. PERKINS U.S. __ 133 S. ct. 1924, 1927, 185 L. ed. 2d. 1019 (2013).

## RETROACTIVITY OF ALLEYNE

ALLEYNE MUST BE GIVEN FULL RETROACTIVITY EFFECT TO CASES ON COLLATERAL REVIEW, AND TREATED AS A "WATERSHED RULE" AND NEW SUB-STANTIVE RULE OF LAW. FAILURE TO OBSERVE THE ALLEYNE RULE CARRIES A SUBSTANTIAL RISK THAT ONE ACCUSED WILL BE EITHER WRONGLY CONVICTED OR SUBJECTED TO A SENTENCE THAT THE LAW CANNOT IMPOSE ON HIM, WHICH NOT ONLY ERODES THE PUBLIC CONFIDENCE IN THE JUSTICE SYSTEM BUT IMPERILS THE SYSTEM'S INTEGRITY, UNDER THESE CIRCUMSTANCES, AND IN THIS CASE, THE INTEREST IN FINALITY MUST YIELD. ALLEYNE IS A NEW SUBSTANTIVE RULE OF LAW. NEW SUBSTANTIVE RULES GENERALLY APPLY RETROACTIVELY, SEE., SCHRIRO V. SUMMERLIN, 542 U.S. 348, 351, 124 S. ct. 2519, 159 L. ed. 2d. 442 (2004). A RULE IS SUBSTANTIVE RATHER THAN PROCEDURAL IF IT ALTERS THE RANGE OF CONDUCT OR THE CLASS OF PERSONS THE LAW PUNISHES. "Id. AT 353, THIS INCLUDES

DECISIONS THAT NARROW THE SCOPE OF A CRIMINAL
STATUTE BY INTERPRETING ITS TERMS." Id. AT
351, SUCH RULES APPLY RETROACTIVELY BECAUSE
THEY NECESSARILY CARRY A SIGNIFICANT RISK
THAT A DEFENDANT STANDS CONVICTED OF AN ACT
THAT THE LAW DOES NOT MAKE CRIMINAL" "OR FACES
A PUNISHMENT THAT THE LAW CANNOT IMPOSE UPON
HIM". BOUSLEY, 523 U.S. AT 620-21 (QUOTING
DAVIS, 417 U.S. AT 346). "IN CONTRAST, RULES
THAT REGULATE ONLY THE MANNER OF DETERMINING
THE DEFENDANT'S CULPABILITY ARE PROCEDURAL."
"SCHRIRO, 542 U.S. AT 353". "PROCEDURAL RULES
DO NOT PRODUCE A CLASS OF PERSONS CONVICTED
OF CONDUCTS THE LAW DOES NOT MAKE CRIMINAL,
BUT MERELY RAISE THE POSSIBILITY THAT SOMEONE
CONVICTED WITH USE OF THE INVALIDATED PROCEDURE
MIGHT HAVE BEEN ACQUITTED OTHERWISE." Id. AT
352, (ALSO SEE CHAMBERS, 555 U.S. AT 122,
WAS SUBSTANTIVE AND THEREFORE APPLIED RETROACTIVE
(ALSO SEE BEGAY, 553 U.S. AT 144-45); SHIPP,
589 F. 3d. 1090. UNDER THE FRAMEWORK OF
TEAGUE V. LANE, 489 U.S. 288, 109 S. ct. 1060,
AN OLD RULE APPLIES BOTH ON DIRECT AND COLLATERAL
REVIEWS, BUT A NEW RULE IS GENERALLY APPLICABLE
ONLY TO CASES THAT ARE STILL ON DIRECT REVIEW,
A NEW RULE IS RETROACTIVELY IN A COLLATERAL
PROCEEDING ONLY IF 1.) THE RULE IS SUBSTANTIVE
OR 2.) THE RULE IS A WATERSHED RULE OF CRIMINAL
PROCEDURE IMPLICATING THE FUNDAMENTAL FAIRNESS

AND ACCURACY OF CRIMINAL PROCEEDING, WHARTON V. BOKTING, 549 U.S. 406, 416, 127 S. Ct. 1173, 167 L. Ed. 2d. 1 (2007) (INTERNAL QUOTATION MARKS AND BRACKETS OMITTED) (DESCRIBING TEAGUE V. LANE, 489 U.S. 288, 109 S. Ct. 1060. IN THE PETITIONER'S MOTION, IT IS CLEAR THAT ALLEYNE APPLIES RETROACTIVELY AS IT MEETS BOTH PRONGS OF RETROACTIVITY AS NOT ONLY IT IS A WATERSHED RULE, BUT ALSO A NEW SUBSTANTIVE RULE.

FINALLY, AND IN SHORT, PETITIONER SUFFERS A LIFE SENTENCE AND 45 YEARS IN VIOLATION OF HIS DUE PROCESS AS HE WAS SENTENCED UNDER CODES AND ENHANCEMENTS THAT DO NOT EXIST IN HIS INDICTMENT AND WERE NOT PROPERLY SUBMITTED FOR A PROPER JURY DETERMINATION ALL IN VIOLATION OF HIS SIXTH AMENDMENT AND DUE PROCESS RIGHTS BY THE UNITED STATES CONSTITUTION.

UNDER "ALLEYNE" ANY FACT INCREASES A MANDATORY MINIMUM SENTENCE FOR A CRIME IS AN ACTUAL ELEMENT OF THE CRIME MUST BE SEPARATELY SUBMITTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT.

## CONCLUSION

PETITIONER PRAYS THAT THIS COURT WILL GRANT HIS MOTION FOR THE ABOVE MENTIONED REASONS IN THE INTEREST OF JUSTICE. THAT

9

PETITIONER WILL BE RESENTENCED AS HIS
SENTENCE STANDS UNCONSTITUTIONAL AND IN
VIOLATION OF DUE PROCESS.


## CERTIFICATE OF SERVICE

ON 6/16/14 TWO COPIES WERE FILED WITH
THE CLERK OF COURT FOR U.S. DISTRICT COURT,
MIDDLE DISTRICT OF FLORIDA (TAMPA), AND ONE
COPY TO THE U.S. ATTORNEY'S OFFICE, SUITE 300,
400 W. WASHINGTON ST., ORLANDO, FLORIDA 3280.


CongHauTo

CONGHAU HUU TO
#18722018
U.S.P LEWISBURG
P.O BOX 1000
LEWISBURG, PA. 17837

10

UNITED STATES DISTRICT COUR
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 94-293-CR-T-24-E |
| | ) |
| CONGHAU HUU TO, | ) |
|   a/k/a "Tigo"; | ) |
| HAI VAN NGUYEN; | ) |
| LAP VAN LE, | ) |
|   a/k/a "Lai Van Le", | ) |
|   a/k/a "Luu Van Le", | ) |
|   a/k/a "Johnny"; | ) |
| TUAN DUC PHUNG; | ) |
| TAI TAN PHAM, | ) |
|   a/k/a "Cao"; | ) |
| LIEM THANH LUONG, | ) |
|   a/k/a Luong Thanh Liem; | ) |
| TUNG VAN NGUYEN, | ) |
|   a/k/a "Tony "; | ) |
| NGUYEN TU DOAN; | ) |
| AN THANH LE; | ) |
| TAM MINH LE; | ) |
|     and | ) |
| DUNG QUOC NGUYEN | ) |

# INDICTMENT

THE GRAND JURY CHARGES:

# COUNT ONE

1.   At all times relevant to the Indictment, the Big Easy
Restaurant, Inc., located at the Tampa Bay Mall, Tampa, Florida
was a corporation organized and existing under the laws of the
State of Florida, and which was engaged in the retail restaurant
business and whose activities affected interstate commerce.

2.   At all times relevant to the Indictment, the Southland Corporation, a corporation organized and existing under the laws of the State of Texas, operated Store number 23741 located at 7124 North Dale Mabry Highway, Tampa, Florida, and engaged in the retail sale of food and other sundries in interstate commerce.

3.   At all times relevant to the Indictment, the Shanghai Buffet Restaurant located in Tampa, Florida was a corporation organized and existing under the laws of the State of Florida, and engaged in the retail restaurant business which activities affected interstate commerce.

4.   At all times relevant to the Indictment, defendants CONGHAU HUU TO, a/k/a "Tigo"; HAI VAN NGUYEN; LAP VAN LE, a/k/a "Lai Van Le", a/k/a "Luu Van Le", a/k/a "Johnny"; TUAN DUC PHUNG; TAI TAN PHAM, a/k/a "Cao"; LIEM THANH LUONG, a/k/a Luong Thanh Liem; TUNG VAN NGUYEN, a/k/a "Tony"; NGUYEN TU DOAN; AN THANH LE; TAM MINH LE; and DUNG QUOC NGUYEN, associated together and with others known and unknown to the Grand Jury, for the purpose of engaging in an organized plan and scheme to enrich themselves by committing armed robberies and to protect themselves from prosecution by committing acts involving murder.  The foregoing constituted an enterprise as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, which enterprise was engaged in and the activities of which affected interstate commerce.

2

5.    From at least as early as March 1993 and continuing up to and including June 1994, in the Middle District of Florida and elsewhere, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

being persons employed by and associated with the enterprise described in paragraph 4 of this Count, which was engaged in and the activities of which affected interstate commerce, together with others both known and unknown to the Grand Jury, did knowingly, willfully and unlawfully, conduct and participate, directly and indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity, as defined by Title 18, United States Code, Section 1961(1) and (5).

6. The pattern of racketeering activity committed by the defendants consisted of the following acts:

### RACKETEERING ACT ONE

The defendants, CONGHAU HUU TO, a/k/a "Tigo"; HAI VAN NGUYEN; LAP VAN LE, a/k/a "Lai Van Le", a/k/a "Luu Van Le", a/k/a "Johnny"; TUAN DUC PHUNG; TUNG VAN NGUYEN, a/k/a "Tony"; NGUYEN TU DOAN; AN THANH LE; TAM MINH LE; and DUNG QUOC NGUYEN, named

3

below committed the following acts, any one of which alone
constitutes the commission of Racketeering Act One:

Racketeering Act 1(a)

From at least as early as March 1993, and continuing up to
and including June 1994, in the Middle District of Florida, and
elsewhere, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

did knowingly, willfully, and unlawfully combine, conspire,
confederate, and agree together and with each other and with
other persons both known and unknown to the Grand Jury, to
unlawfully obstruct, delay, and affect commerce as that term is
defined in Title 18, United States Code, Section 1951(b)(3), and
the movement of articles and commodities in such commerce, by
robbery as that term is defined in Title 18, United States Code,
Section 1951(b)(1), in that the defendants did unlawfully agree
to take and obtain personal property consisting of jewelry and
United States currency by means of actual and threatened force,
violence, and fear of injury, in violation of Title 18, United
States Code, Section 1951.

4

## Racketeering Act 1(b)

From at least as early as March 1993, and continuing up to and including June, 1994, in the Middle District of Florida and elsewhere, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree together and with each other and with other persons both known and unknown to the Grand Jury, to commit an act involving robbery, that is, ~~did~~ to enter a dwelling with the intent to commit a robbery of the occupants therein, in violation of Florida Statutes 777.04(3) and 812.135.

### RACKETEERING ACT TWO

The defendants CONGHAU HUU TO, a/k/a "Tigo"; TUAN DUC PHUNG; AN THANH LE; TAM MINH LE; and DUNG QUOC NGUYEN, named below committed the following acts, any one of which alone constitutes the Commission of Racketeering Act Two:

Racketeering Act 2(a)

On or about April 23, 1994, in the Middle District of
Florida, the defendants,

CONGHAU HUU TO,<br>
a/k/a "Tigo";<br>
TUAN DUC PHUNG;<br>
AN THANH LE;<br>
TAM MINH LE;<br>
and<br>
DUNG QUOC NGUYEN,

did unlawfully obstruct, delay and affect, and attempt to
obstruct, delay and affect commerce, as that term is defined in
Title 18, United States Code, Section 1951(b)(3), and the
movement of articles and commodities in such commerce, by
robbery, as that term is defined in Title 18, United States Code,
Section 1951(b)(1), in that the aforementioned defendants did
unlawfully attempt to take and obtain personal property
consisting of United States currency from an employee of the Big
Easy Restaurant, Tampa, Florida, against his will by means of
actual and threatened force, violence, and fear of injury in
violation of Title 18, United States Code, Sections 1951(a) and
2.

Racketeering Act 2(b)

On or about April 23, 1994, in the Middle District of
Florida, the defendants,

CONGHAU HUU TO,<br>
a/k/a "Tigo";<br>
TUAN DUC PHUNG;<br>
AN THANH LE;<br>
TAM MINH LE;<br>
and<br>
DUNG QUOC NGUYEN,

6

did commit an act involving murder, that is, to knowingly, unlawfully, and willfully kill a human being, that is, Khanh Quoc Le, while said defendants were engaged in the perpetration of a robbery, by firing a shotgun and two handguns at the said Khan Quoc Le while the defendants attempted to rob the said Khanh Quoc Le, which robbery was perpetrated by the defendants, in violation of Florida Statutes 777.04(3), 782.04(1)(a)(2)(d), and 777.011.

### RACKETEERING ACT THREE

On or about May 7, 1994, in the Middle District of Florida, the defendant,

TUNG VAN NGUYEN,
a/k/a "Tony";
and
AN THANH LE;

together with others not indicted herein, did commit an act involving robbery, that is, did enter a dwelling with the intent to commit a robbery and did commit a robbery of the occupants therein, in violation of Florida Statute 812.135.

### RACKETEERING ACT FOUR

On or about May 13, 1994, in the Middle District of Florida, the defendant,

TUNG VAN NGUYEN,
a/k/a "Tony";
AN THANH LE;
and
TAM MINH LE;

together with others not indicted herein, did commit an act involving robbery, that is, did enter a dwelling with the intent to commit a robbery and did commit a robbery of the occupants therein, in violation of Florida Statute 812.135.

7

### RACKETEERING ACT FIVE

On or about May 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
and
TUNG VAN NGUYEN,
a/k/a "Tony",

did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully take and obtain personal property consisting of United States currency with a value exceeding $8,000 from an employee of Southland Corporation, Tampa, Florida, against his will by means of actual and threatened force, violence, and fear of injury in violation of Title 18, United States Code, Section 1951(a).

### RACKETEERING ACT SIX

On or about May 29, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
HAI VAN NGUYEN;
LAP VAN LE,
a/k/a "Lai Van Le",
a/k/a "Luu Van Le",
a/k/a "Johnny";
TUAN DUC PHUNG;
and
NGUYEN TU DOAN,

did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully take and obtain personal property consisting of jewelry and United States currency with a value exceeding $12,000 from employees of the Shanghai Buffet Restaurant, Tampa, Florida, against their will by means of actual and threatened force, violence, and fear of injury in violation of Title 18, United States Code, Section 1951(a).

**RACKETEERING ACT SEVEN**

The defendants CONGHAU HUU TO, a/k/a "Tigo"; and NGUYEN TU DOAN, named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Seven:

Racketeering Act 7(a)

On or about May 31, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo";
and
NGUYEN TU DOAN,

did knowingly, willfully, and with premeditation, unlawfully attempt to kill a human being, that is An Thanh Le, with the intent to prevent the communication by the said An Thanh Le to a law enforcement officer, information relating to the commission

9

of a federal offense in violation of Title 18, United States
Code, Sections 1512(a)(1)(C) and 2.

Racketeering Act 7(b)

On or about May 31, 1994, in the Middle District of Florida,
the defendants,

> CONGHAU HUU TO,
> a/k/a "Tigo";
> and
> NGUYEN TU DOAN,

did knowingly, willfully, and with premeditation, unlawfully
attempt to kill a human being, that is An Thanh Le, in violation
of Florida Statutes 782.04(1)(a)1 and 777.011.

All in violation of Title 18, United States Code, Section
1962(c).

# COUNT TWO

1.   The allegations of paragraphs 1 through 4, inclusive of
Count One, are repeated and realleged herein as if fully set
forth at length.

2.   From at least as early as March 1993, and continuing up
to and including June 1994, in the Middle District of Florida and
elsewhere, the defendants,

> CONGHAU HUU TO,
> a/k/a "Tigo";
> HAI VAN NGUYEN;
> LAP VAN LE,
> a/k/a "Lai Van Le",
> a/k/a "Luu Van Le",
> a/k/a "Johnny";
> TUAN DUC PHUNG;
> TAI TAN PHAM,
> a/k/a "Cao";

10

THANH LUONG,
a/k/a Luong Thanh Liem;
TUNG VAN NGUYEN,
a/k/a "Tony";
NGUYEN TU DOAN;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

being persons employed by and associated with the enterprise described in paragraph 4 of Count One of this Indictment, which was engaged in and the activities of which affected interstate commerce, knowingly, willfully and unlawfully  did combine conspire, confederate and agree together, and with each other, and with other persons to the Grand Jury, both known and unknown, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity as defined by Title 18, United States Code, Section 1961(1) and (5), namely, multiple acts indictable under Title 18, United States Code, Section 1951(a) that is interference with commerce by robbery, and conspiracy to do so, and acts involving robbery and murder in violation of Title 18, United States Code, Section 1512(a)(1)(c) and Florida Statutes 777.04(3), 782.04(1)(a)2d, 812.135 and 777.011.

3.   It was part of said conspiracy that each defendant agreed that two or more acts of racketeering would be committed in the conduct of the affairs of the enterprise.

11

4.   It was further a part of said conspiracy that the defendants would and did "case" certain persons and businesses known to them to generate large quantities of United States currency, as part of a plan and scheme to commit armed robberies of these persons and businesses.

5.   It was further a part of the conspiracy that the defendants would recruit juvenile runaways to join the enterprise believing that the juveniles would face lesser criminal penalties if apprehended by law enforcement authorities.

6.   It was further a part of the conspiracy that the defendants did steal motor vehicles prior to committing armed robberies in order to provide a means of escape from the scene of the robbery.

7.   It was further a part of said conspiracy that the defendants did disguise their identities by the use of nylon stocking masks and cloth bandannas and did wear gloves to prevent leaving latent fingerprints during the course of the armed robberies.

8.   It was further part of the conspiracy that the defendants would and did carry firearms consisting of handguns and shotguns, and did tie victims of the aforementioned robberies with flexcuffs and duct tape.

9.   It was further a part of the conspiracy that the defendants agreed to murder An Thanh Le, with the intent to prevent the said An Thanh Le from communicating information to law enforcement authorities regarding the commission of a federal offense.

All in violation of Title 18, United States Code, Section 1962(d).

# COUNT THREE

From at least as early as March 1993, and continuing up to and including June 1994, in the Middle District of Florida, and elsewhere, the defendants,

> CONGHAU HUU TO,
> a/k/a "Tigo";
> HAI VAN NGUYEN;
> LAP VAN LE,
> a/k/a "Lai Van Le",
> a/k/a "Luu Van Le",
> a/k/a "Johnny";
> TUAN DUC PHUNG;
> TAI TAN PHAM,
> a/k/a "Cao";
> LIEM THANH LUONG,
> a/k/a Luong Thanh Liem;
> TUNG VAN NGUYEN,
> a/k/a "Tony";
> NGUYEN TU DOAN;
> AN THANH LE;
> TAM MINH LE;
> and
> DUNG QUOC NGUYEN,

did knowingly, willfully and unlawfully combine, conspire, confederate, and agree together and with each other and with other persons, both known and unknown to the Grand Jury, to unlawfully obstruct, delay and affect commerce as that term is

13

defined in Title 18, United States Code, Section 1951(b)(3), and
the movement of articles and commodities in such commerce, by
robbery, as that term is defined in Title 18, United States Code,
Section 1951(b)(1), in that the defendants did unlawfully agree
to take and obtain personal property consisting of jewelry and
United States currency by means of actual and threatened force,
violence, and fear of injury.

All in violation of Title 18, United States Code, Section
1951(a).

# COUNT FOUR

On or about April 23, 1994, in the Middle District of
Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo"
TUAN DUC PHUNG;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

together with others not indicted herein, did unlawfully
obstruct, delay and affect, and attempt to obstruct, delay and
affect commerce, as that term is defined in Title 18, United
States Code, Section 1951(b)(3), and the movement of articles and
commodities in such commerce, by robbery as that term is defined
in Title 18, United States Code, Section 1951(b)(1), in that the
aforementioned defendants did unlawfully attempt to take and
obtain personal property consisting of United States currency
from an employee of the Big Easy Restaurant, Tampa Bay Mall,

14

Tampa, Florida, against his will by means of actual and

threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections

1951(a) and 2.

# COUNT FIVE

On or about May 23, 1994, in the Middle District of Florida,

the defendants,

CONGHAU HUU TO,
a/k/a "Tigo"
and
TUNG VAN NGUYEN,
a/k/a "Tony",

together with others not indicted herein, did unlawfully

obstruct, delay, and affect, and attempt to obstruct, delay, and

affect commerce, as that term is defined in Title 18, United

States Code, Section 1951(b)(3), and the movement of articles and

commodities in such commerce, by robbery as that term is defined

in Title 18, United States Code, Section 1951(b)(1), in that the

aforementioned defendants did unlawfully take and obtain personal

property consisting of United States currency with a value

exceeding $8,000 from an employee of Southland Corporation,

Tampa, Florida, against his will by means of actual and

threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections

1951(a) and 2.



# COUNT SIX

On or about May 29, 1994, in the Middle District of Florida, the defendants,

> CONGHAU HUU TO,
> a/k/a "Tigo";
> HAI VAN NGUYEN;
> LAP VAN LE,
> a/k/a "Lai Van Le",
> a/k/a "Luu Van Le",
> a/k/a "Johnny";
> TUAN DUC PHUNG;
> TAI TAN PHAM,
> a/k/a "Cao";
> LIEM THANH LUONG,
> a/k/a Luong Thanh Liem;
> TUNG VAN NGUYEN,
> a/k/a "Tony";
> and
> NGUYEN TU DOAN,

together with others not indicted herein, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the aforementioned defendants did unlawfully take and obtain personal property consisting of jewelry and United States currency with a value exceeding $12,000 from employees of the Shanghai Buffet Restaurant, Tampa, Florida, against their will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

16

# COUNT SEVEN

On or about April 23, 1994, in the Middle District of Florida, the defendant,

CONGHAU HUU TO,
a/k/a "Tigo"
TUAN DUC PHUNG;
AN THANH LE;
TAM MINH LE;
and
DUNG QUOC NGUYEN,

together with others not indicted herein, knowingly used and carried firearms, that is, handguns and a shotgun, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, interference with commerce by threats and violence as alleged in Count Four of the Indictment which is incorporated herein by reference as if set forth at length.

All in violation of Title 18, United States Code, Section 924(c)(1) and 2.

# COUNT EIGHT

On or about May 23, 1994, in the Middle District of Florida, the defendants,

CONGHAU HUU TO,
a/k/a "Tigo"
and
TUNG VAN NGUYEN,
a/k/a "Tony",

together with others not indicted herein, knowingly used and carried firearms, that is, handguns, during and in relation to a

17

crime of violence for which they may be prosecuted in a court of the United States, that is, interference with commerce by threats and violence as alleged in Count Five of the Indictment which is incorporated herein by reference as if set forth at length.

All in violation of Title 18, United States Code, Section 924(c)(1) and 2.

# COUNT NINE

On or about May 29, 1994, in the Middle District of Florida, the defendants,

> CONGHAU HUU TO,
> a/k/a "Tigo"
> LAP VAN LE,
> a/k/a "Lai Van Le",
> a/k/a "Luu Van Le",
> a/k/a "Johnny";
> TUAN DUC PHUNG;
> and
> NGUYEN TU DOAN,

together with others not indicted herein, knowingly used and carried firearms, that is, handguns, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, interference with commerce by threats and violence as alleged in Count Six of the Indictment which is incorporated herein by reference as if set forth at length.

All in violation of Title 18, United States Code, Section 924(c)(1) and 2.

A TRUE BILL

_____
FOREPERSON

CHARLES R. WILSON
UNITED STATES ATTORNEY

By: _____
JULIE F. THOMAS
Assistant U. S. Attorney
USA No. 44

_____
KEVIN R. MARCH
Assistant U. S. Attorney
Chief, Strike Force Unit
USA No. 23

1

1            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
2                 TAMPA DIVISION

3    --------------------------------
     UNITED STATES OF AMERICA,        No. 94-293-CR-T-17(E)
4
          Plaintiff,
5
          -vs-
6
     CONGHAU HUU TO,
7
          Defendant.                  Tampa, Florida
8    --------------------------------  July 16, 1996

9

10                      SENTENCING
        BEFORE THE HONORABLE THOMAS A. WISEMAN,
11         Senior United States District Judge

12

13   APPEARANCES:

14   For the Government:      JULIE THOMAS
                              Assistant United States Attorney
15                            500 Zack Street
                              Tampa, Florida   33602
16                            (813) 274-6000

17
     For the Defendant:       DANIEL CASTILLO, ESQUIRE
18                            607 W. Martin Luther King Blvd.
                              Tampa, Florida   33603
19                            (813) 238-8580

20
     Reported by:             MICHAEL J. CANO, RPR
21                            Frecka & Associates
                              P.O. Box 1921
22                            Tampa, Florida   33601-1921
                              (813) 221-4132

23

24

25



2

1            P R O C E E D I N G S

2            (Court called to order at 2:40 p.m.)

3            THE COURT:  All right.  The next matter set for

4  hearing is United States versus Conghau Huu To.

5            Is the government ready?

6            MS. THOMAS:  Yes, Your Honor.

7            THE COURT:  Is the defendant ready?

8            MR. CASTILLO:  Yes, Your Honor.

9            THE COURT:  Mr. Castillo, have you had an

10  opportunity to go over the presentence report with the

11  defendant?

12            MR. CASTILLO:  Yes, Your Honor.

13            THE COURT:  Mr. To, have you thoroughly read and

14  understand the presentence report?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  All right.  All right then,

17  Mr. Castillo, I'll hear you on your objections.

18            MR. CASTILLO:  Your Honor, some of them overlap.

19  I guess the first and foremost, the most important one that

20  I see is the accountability of Mr. To for the murder of

21  Con Quoc Le.  The probation office has scored him with a

22  base level of 43 finding him responsible under a

23  first-degree-murder theory of the murder of Con Quoc Le.

24            The Court's already ruled somewhat on this issue

25  as it related to Tam Minh Le, who was the actual shooter of

3

1  Con Quoc Le, as to the April 23rd Saigon Palace incident.

2          The Court will recall Mr. To, although he's, as

3  the jury found, the ring leader or one of the orchestrators

4  of this conspiracy to commit a robbery of Mr. Con Quoc Le,

5  he was across the street in the Saigon Palace when the

6  victim was killed.

7          Now, there's been some dispute as to what the

8  state of mind of Mr. Tam Minh Le was when he actually shot

9  Con Le.  And under the Pinkerton Theory in aiding and

10 abetting, we recognize that Mr. To may be held accountable

11 for the acts of coconspirators for reasonably foreseeable

12 acts.

13         Now, as the jury so found, there was a conspiracy

14 to commit a robbery of Mr. Con Quoc Le, and in light of the

15 sequence of events that occurred that night, I mean, first

16 of all, the victim that night was not robbed of the money

17 that was in his possession.  He was found with some $700,

18 and there was a contention that Mr. Tam Minh Le had bad

19 blood and it was separate and apart from any conspiracy.

20         But the point is, Judge, is Mr. To responsible for

21 the shooting of Con Le as it related to the robbery?  In

22 other words, is it a foreseeable act, kind of like the same

23 reasoning that the other attorneys argued for their clients

24 as it related to the abduction of the Lin family?  Is

25 that -- was that abduction or was the shooting of Con Le a

4

1  reasonably foreseeable act of a conspiracy to commit

2  robbery?  There was no talk of killing anyone during the

3  conspiratorial conversations.  It was something that had

4  happened that night.  Now, the question is, is it reasonably

5  foreseeable?  That's one question.

6          The second one, is it a first-degree murder, which

7  would allow the application of 2A1.1?  I point out to the

8  Court that the two issues to resolve based upon the facts of

9  the case, is Mr. To liable?  And if the Court says it's not

10 a reasonably foreseeable act, the murder of Con Le, then

11 Mr. To, under that count, would be liable for the conspiracy

12 to commit robbery, which is a base level 20 which would be

13 enhanced to 27.  That's one alternative the Court has based

14 upon its findings.

15          I don't need to belabor the facts.  The Court is

16 well aware of the facts.  Alternatively, Judge, as it

17 relates to Mr. To, the Court can also find that maybe it's a

18 foreseeable consequence of his acts, but was it in fact a

19 first-degree murder as it relates to Mr. To?

20          Conceivably the Court can say, Well, based upon

21 the intent of the defendant, was it knowingly and willfully

22 committed?  Unfortunately -- well, as I've heard already the

23 Court's already made a finding as to Mr. Tam Minh Le, which

24 is as to that defendant, but Mr. To, is he -- should he be

25 accountable for a second-degree murder, which would be a

5

1  level 33, and subject to the according enhancements?

2          I submit to the Court, Judge, that obviously it's

3  way beyond -- it's outside the scope of this conspiracy to

4  commit a robbery of Con Le.  The murder was an unfortunate,

5  unforeseeable act as it relates to Mr. To.  This was

6  something that Mr. Tam Minh Le did off on a frolic of his

7  own, so to speak.  I mean, it wasn't contemplated by the

8  conspiracy.  It was an unfortunate occurrence that occurred.

9  No one can dispute the death, but the question remains, what

10 was the state of mind of Mr. Tam Minh Le at the time of the

11 killing?  And whether or not Mister -- was that killing a

12 foreseeable act as to that conspiracy to commit robbery?

13         Shall I go on or do you want to let the government

14 respond?

15         THE COURT:  Well, you may continue.

16         MR. CASTILLO:  Okay.  Secondly, Judge, obviously

17 we have --

18         THE COURT:  I'll address that.  I'm prepared to

19 address that at any point.  That's all you have to say about

20 that?

21         MR. CASTILLO:  Right.

22         THE COURT:  Let me just say this, Mr. Castillo.

23 We have both the Felony Murder Rule and the 18 United States

24 Code, Section 2, that which could be done by a person

25 himself can also be done by a principal.  We have Pinkerton

6

1  liability under the conspiracy theory.

2         Now, it seems logical to this Court that if you

3  arm -- and this is -- these are determined facts by the

4  jury's verdict -- if you plot a felony and you place weapons

5  in the hands of your subordinates and coconspirators and a

6  murder results, a shooting results, it seems to me that is

7  entirely foreseeable.

8         It's further corroborated by the fact that three

9  individuals, I believe, fired shots at Mr. Con Quoc Le.  Two

10  of them hit him before Mr. Tam Minh Le finished him off.

11  The circumstances of this armed robbery, which resulted in a

12  murder, were entirely foreseeable and Mr. To is fully

13  responsible for the consequences of the circumstances which

14  he set in motion.

15         As to the degree, whether it be first or second,

16  again, Felony Murder Rule would make it first-degree murder.

17  But Mr. To has indicated by his actions, not only in this

18  instance but in others as well, including the attempted

19  murder of An Le, that he has no hesitation to take the life

20  of another person.

21         And from all the facts and circumstances of this

22  case, Mr. To is more responsible, frankly, than

23  Mr. Tam Minh Le for the death of Con Quoc Le.

24  Mr. Tam Minh Le is a retarded individual with emotional

25  problems.  Mr. To is a calculating, intelligent individual

7

1   and he knew what he was doing when he did it.

2          So that your application for a different guideline

3   will be denied.

4          MR. CASTILLO:  Very well, Your Honor.  So then the

5   probation office's calculation would be --

6          THE COURT:  Calculation of 43 points for the base

7   offense level will be adopted by the Court.

8          MR. CASTILLO:  Well, Judge, then the next

9   objection that I have for the Court's consideration is a

10  two-level enhancement for obstruction of justice.  This has

11  to do with the September 22nd, 1994 beating of An Le in a

12  holding cell.

13         THE COURT:  Now, the only thing I got about that

14  was a report -- I believe I had a report during the trial

15  from the Marshal's Service.  Maybe you better put some proof

16  on about that, Ms. -- as to whether or not Mr. To was the

17  one who did it and whether or not it was in fact an act of

18  intimidation of a witness.

19         MS. THOMAS:  Your Honor, there was testimony at

20  trial by Dung Quoc Nguyen about witnessing that beating.  It

21  wasn't just a report.  I believe we had submitted --

22         THE COURT:  Remind me of that testimony.  You all

23  have the advantage.  The Court is not provided a copy of the

24  transcript unless you cite it to me and cite me the page

25  numbers.

8

1        MS. THOMAS:  Your Honor, Dung Quoc Nguyen

2   testified he was in a holding cell downstairs along with all

3   of the other co-defendants.  And I believe he described at

4   trial how they were all chained together in different rows.

5   An Le was next to him.  He testified that Lap Van Le

6   originally elbowed An Thanh Le.  An Thanh Le fell to the

7   ground.  Mr. To also struck An Le, and the statement was

8   made to Dung Quoc Nguyen, You didn't see anything.  I have

9   to refer to the trial transcript and I can get you that

10  citation.

11       THE COURT:  Well, let's see if Mr. Castillo agrees

12  that that occurred.

13       MR. CASTILLO:  I agree that's what the testimony

14  was of Mister -- of Dung Quoc Nguyen.  However, Judge,

15  again, there's no -- I mean, let's just assume for a minute

16  that the beating did occur, that Mr. To did in fact strike

17  him.  There's no indication even from her reciting of her

18  recollection of the testimony that it was, You better not

19  testify.  You better change your testimony, or anything to

20  that effect.

21       We don't know why this beating occurred.

22  Mr. An Le did not testify.  There's no indication that

23  Mr. An Le did not testify because he was threatened by

24  anyone.  Here we're getting a two-level

25  obstruction-of-justice enhancement for a battery that

9

1  occurred outside the scope of the indictment, prior to

2  trial.

3           They were all in the holding cell, and let's say

4  he was assaulted and said, You didn't see anything.  That

5  doesn't mean it's obstruction of justice.  But what does

6  that mean?  Assuming that we have to take the testimony as

7  given by this witness, what does that mean?  Is that an

8  obstruction of justice?  And I would submit that it doesn't

9  rise to the level of a two-level enhancement.

10          THE COURT:  All right, sir.  Let me hear you on

11  that, Ms. Thomas.

12          MS. THOMAS:  Your Honor, the obstructive

13  behavior -- let me just flip to the particular guideline,

14  Your Honor.

15          THE COURT:  Obstruction of justice should have

16  some evidence that the motivation for this attack was to

17  prevent his testimony or in some way try to change his

18  testimony.

19          MS. THOMAS:  That's correct, Your Honor.

20          THE COURT:  You know, he was mad enough to try to

21  kill him once when he thought he was cooperating with the

22  FBI.  But is this not piling an inference on an inference

23  Ms. --

24          MS. THOMAS:  I don't think so, Your Honor,

25  especially in light of some of the other documentation that

10

1  we all received during the course of this trial.

2          THE COURT:  And that's the --

3          MS. THOMAS:  Those are the letters that were

4  attributed to Mr. To that -- or the threats attributed to

5  Mr. To in letters by An Le to Nguyen Tu Doan as well as the

6  actual fight that broke out between the defendants in this

7  case.

8          After the -- after the testimony of Nguyen Tu

9  Doan, if Your Honor will recall, there was an incident in

10  the sally port of the Morgan Street jail, I believe that was

11  the report that Your Honor was referring to, and Mr. An Le

12  was the individual both assaulted prior to the indictment,

13  which formed a basis for one of the predicate acts, as well

14  as he's assaulted in a holding cell after a court hearing.

15          And keeping in mind that An Le was the only

16  individual that for a short period of time was let out on

17  bond, Mr. To, you know, clearly believed Mr. An Le was going

18  to be a witness against him at trial.

19          THE COURT:  I think it's -- you know, I'm

20  accepting as true the fact that he was assaulted in jail and

21  assaulted by Mr. To.  I think it's fairly obvious they don't

22  like each other.  But to say that that rises to the level of

23  obstruction of justice, Ms. -- without more is inference

24  upon inference.

25          MS. THOMAS:  Your Honor, I accede to your ruling,

11

1  obviously.  We don't have more to give the Court.

2          THE COURT:  Well, you know, several of these

3  witnesses were scared of Mr. To, that was obvious at trial.

4  Mr. Doan, Mr. Tran, and probably with good reason.  But I'll

5  reserve that.

6          Go ahead now and let me hear you on the rest of

7  your objections, Mr. Castillo.

8          MR. CASTILLO:  All right, Judge, that objection --

9  because Mr. To was convicted of all nine counts and there's

10  four separate groupings and that enhancement is on each

11  group, obviously we're at a level 43 and that objection

12  would apply to all of them.

13          Judge, I would also -- well, as far as the one

14  count of the 924(c) that you ruled this morning on Bailey,

15  that objection, I guess, would also be overruled?

16          THE COURT:  That is -- that is noted for the

17  record and you need not reiterate it.  But I will await the

18  judgment of the Eleventh Circuit as to whether or not Bailey

19  also deleted 18 United States Code, Section 2, from the

20  books, and I don't think it did.

21          Now, go ahead.

22          MR. CASTILLO:  All right, Judge.  And then also

23  just with relation to Mr. To's May 31st, 1996, probation

24  revocation hearing, he was assigned three points for --

25  Criminal History Points for a probation violation hearing

12

1  which, as the Court will recall, Mr. To was on probation for

2  being a felon in possession of a firearm during the course

3  of the trial.  Recently what happened was he was taken to

4  state court and ordered to terminate his probation because

5  of the federal proceeding because this indictment and

6  conviction was the basis for that violation.

7         We went before the trial judge, and what the trial

8  judge did there was defer to the federal court, in essence

9  give Mr. To a time-served sentence.  Technically Mr. To did

10  not have a day of credit for that violation of probation

11  because he had not been served with a warrant, the arrest

12  warrant.

13         But after of the trial court heard that Mr. To had

14  been detained since December 22nd of 1994 and been in

15  custody, that he has been convicted and was facing

16  substantial time here in the federal courts, the trial court

17  in essence what they did was defer to the federal court and

18  said, Well, then what we'll do is give him credit for time

19  served, and gave him credit for 525 days, which was the

20  calculation he had from December 22nd, 1994, to May 31st of

21  1996, and said, We'll sentence you to that.

22         Well, he was already enhanced two levels or two

23  points for -- two criminal history points for being on

24  probation.  On top of that, he's then given an additional

25  three points for the same revocation on the same charge, and

13

1   what I think that is is overrepresentative of his Criminal

2   History Category, of his criminal history, and it amounts to

3   double counting.

4            And I would submit to the Court that instead of

5   the Category V that the probation office has, that it should

6   be reflected to go down to Category III, remove those five

7   points and then he's placed in a Category III, and I think

8   now we're about a level 46, Category III.  I don't know

9   that -- well, it doesn't make a difference, but that's my

10  objection to the criminal history points.

11           In essence, it's a discretion of the Court now to

12  determine whether or not it's overrepresentative, although

13  it may be properly scored by the probation office, but the

14  Court can look at it and say, Wait, there's something wrong

15  here.  It's double counting and it is overrepresentative of

16  his criminal history.

17           THE COURT:  You agree that it does not make a

18  difference in the sentence to be imposed?

19           MR. CASTILLO:  Not as the Court's ruling.  Now,

20  obviously should you be reversed on that ruling, then it may

21  have an affect later on.  But accepting everything --

22           THE COURT:  Let me hear you, Ms. Thomas, on that

23  matter.

24           MS. THOMAS:  Your Honor, as I understand it,

25  Mr. Castillo is indicating that the probation office has

14

1  correctly scored Mr. To's criminal history category; is that

2  correct?

3        MR. CASTILLO:  Yes.

4        MS. THOMAS:  But he is arguing that it is

5  overrepresentative --

6        THE COURT:  Well, I think he also is objecting to

7  the three points added for revocation of his probation for

8  which he's already received two points for the probation

9  itself.

10        MS. THOMAS:  Well, Your Honor, I think --

11        THE COURT:  And this all occurred -- and the

12  revocation of probation is this offense.

13        MS. THOMAS:  Correct, Your Honor.

14        THE COURT:  As a result of this offense.

15        MS. THOMAS:  Well, Your Honor, the two are

16  separate.  I support the probation officer's calculation.

17  The two are separate.  The guidelines indicate that if you

18  commit an offense while under some kind of a rehabilitative

19  sentence, you're assessed two levels.

20        He -- because of the instant indictment and not

21  just the indictment, his conviction on that indictment, he

22  was take -- he faced in state court a probation revocation

23  on the four-year probationary sentence he received for

24  possession of a firearm by a convicted felon.  They gave him

25  the 525 days.

15

1           THE COURT:   Twenty-five, or 545 days --

2           MS. THOMAS:   Twenty-five days, 525 days in

3    confinement, which in essence is what he had served here

4    while awaiting trial.   They then properly count the fact

5    that that 525 days is considered his sentence on the

6    underlying offense.   So the probation office has correctly

7    scored Mr. To's criminal history on that offense.   It is a

8    separate issue whether the Court feels that the Criminal

9    History Category of V overrepresents Mr. To's criminal

10   history.

11          We would assert that it does not overrepresent his

12   criminal history, because obviously the criminal history

13   calculations are inteded to give the Court guidance in

14   determining what, among other things, what Mr. To's

15   likelihood of recidivism is in this case.   And, you know, he

16   has a substantial criminal history, and not unlike others

17   who have a Criminal History of V.   We have a possession of

18   cocaine offense, an armed robbery offense, a grand larceny

19   offense, and then possession of a firearm by a convicted

20   felon.   And these are unrelated to the conduct here.

21          THE COURT:   All right.

22          Now then, Mr. Castillo, do you have further

23   objections?

24          MR. CASTILLO:   My objection on Paragraph 9, Judge,

25   having to do with the 5K2.0 not being calculated by the

16

1  guidelines, when I filed that what I contemplated was the

2  actions taken on April 24th.  So I would just merge that

3  with the other argument and that's why I cited that as far

4  as not contemplated by the guidelines.  But there is a

5  application note which the Court has ruled on.

6          And in light of that, I have -- the other argument

7  that I would advance to the Court obviously is the

8  three-level enhancement for role in the offense, but I think

9  the Court has made its findings this morning that Mr. To is

10 in fact --

11         THE COURT:  In a <u>leadership role.</u>

12         MR. CASTILLO:  -- in a leadership role.  So in

13 light of that I have nothing further.

14         THE COURT:  Ms. Thomas, do you wish to be heard

15 further on any of these objections?

16         MS. THOMAS:  No, Your Honor, I do not.

17         THE COURT:  <u>All right.  Then the Court will rule</u>

18 <u>on the objections.  I think I've fully discussed the</u>

19 <u>accountability of Mr. To for the murder of Con Quoc Le and</u>

20 <u>that 43 is the appropriate level under 2A1.1.</u>

21         <u>His role in the offense is that of leadership and</u>

22 <u>the three-level enhancement is appropriate.</u>

23         You object -- you didn't address this,

24 Mr. Castillo, but do you object to the three-level

25 enhancement for five or more --

17

1          MR. CASTILLO:  Well, that was the last thing I

2  said.

3          THE COURT:  Oh, all right.  The conspiracy

4  consisted of more than five or more persons, so that

5  objection is overruled.

6          Then the two-level enhancement for obstruction of

7  justice, that may have been the motivation for the attack in

8  the jail, but the proof that that was the motivation is

9  lacking.  So I'm going to sustain the objection to that.

10          And as to the probation revocation of points,

11  those three points were actually assessed for the prior --

12  for the prior conviction of possession of a firearm by a

13  convicted felon, and the two points were because he was on

14  probation at the time of the commission of this offense.  So

15  that's appropriately calculated by the probation office and

16  it does not overrepresent the criminal history.

17          So the Court determines that the offense level's

18  46, the Criminal History Category is V, the sentencing range

19  is life in prison.

20          What's the fine range?

21          THE PROBATION OFFICER:  It remains the same,

22  Your Honor, 25,000 to 250,000.

23          THE COURT:  Fine range is 25,000 to 250,000.  And

24  supervised release is -- well, there are some mandatory

25  minimums also.  There's consecutive sentences, the life

18

1   imprisonment is as to Counts 1 and 2.   There are mandatory

2   consecutive sentences required in this case as well.

3          As to Counts 3, 4, 5, and 6, the guideline on that

4   is 20 years.

5          Is that a mandatory minimum?

6          MR. CASTILLO:   No.   I think that's a statutory

7   maximum, Judge.

8          MR. THOMAS:   That's a statutory maximum.

9          THE COURT:   What's the guideline on it?

10          MS. THOMAS:   Well, since he's at a level 43, it

11   would be 20 years.

12          THE COURT:   All right.   Then as to Counts 3, 4, 5,

13   and 6, the guideline requires 240 months, which can be

14   concurrent with the life sentence.

15          As to Count 7, a five-year consecutive mandatory

16   is required.

17          As to Count 8, a 20-year consecutive is required.

18          As to Count 9, a 20-year consecutive is required.

19          Now, then, I'll hear you, Mr. Castillo.

20          Special assessment of $450 is also required.   And

21   dividing up the restitution, $8,700 should be paid to the

22   Lins.

23          Are there other victims to whom restitution is

24   required to be made?

25          MS. THOMAS:   Your Honor, the probation office has

19

1   indicated that restitution in the amount of $3,563.21 as

2   Mr. To's portion is owed to the Southland Corporation, that

3   would be to 7-11.

4           THE COURT:  That's the bank, the Barnett Bank?

5           MS. THOMAS:  The Barnett Bank drive-thru incident,

6   and then $5,164.21 to the Lins.

7           THE COURT:  All right.  Those amounts will be

8   ordered.

9           MR. CASTILLO:  Judge, I would just add in light of

10  the financial condition of the defendant, I would ask the

11  Court to waive fines of cost of supervision.

12          THE COURT:  I will do that, yes.

13          Let me hear you further with anything else you

14  would like to say.

15          MR. CASTILLO:  No, Your Honor, I was going to

16  check with my client to see if he would like to say

17  anything.

18          THE COURT:  Yes, see if he would like to say

19  anything on his own behalf.

20          MR. CASTILLO:  Your Honor, I have nothing further

21  to add in light of the Court's ruling over previous

22  objections, and Mr. To has indicated he doesn't wish to

23  address the Court.

24          THE COURT:  Is there a victim in the courtroom?

25          MS. THOMAS:  No, Your Honor.

20

1          MR. CASTILLO:  This is Mr. To's family,

2    Your Honor.

3          THE COURT:  I understand.  Would they like to be

4    heard?

5          MR. BRUCE TO:  Yes, Your Honor.  May we approach

6    the podium?

7          THE COURT:  Come around.

8          MR. CASTILLO:  Your Honor, I would like to

9    introduce Mr. Bruce To, who is the defendant's brother.

10         THE COURT:  Older or younger, Mr. To?

11         MR. BRUCE TO:  Younger, sir.  Thank you for giving

12   me the opportunity to address the Court, yourself, and the

13   prosecutors.  I just wanted to introduce my mother, my

14   father, my sister-in-law, and my youngest sister.

15         With all due respect to you and the prosecutors, I

16   would like to ask several questions on behalf of my family.

17   Conghau To, my brother, was working for and helping the

18   government and the FBI.  Why is he being punished the most?

19   That's my first question.

20         My second question was, from reading the

21   transcripts, there was no evidence linking my brother to any

22   crimes.  Why is he being punished again?  Is it because of

23   what the other convicted criminals testified after they

24   found out that my brother was helping the government and the

25   FBI?

21

1          I've heard your sentences and understand them.

2    There's nothing we can do financially and all we ask you to

3    do is to review the case and transcripts much more

4    thoroughly to see there are many inconsistencies with the

5    prosecuting witnesses and conspiracy among the other

6    defendants.

7          That's all I have to say.

8          THE COURT:  Would any of the other members of the

9    family wish to say anything?

10         Ms. To?

11         MS. NGUYEN:  Thank you for letting me talk today.

12         MR. CASTILLO:  Your Honor, this is Con Nguyen.

13         THE COURT:  Yes.  She came to this country very

14   tragically and had some very traumatic experiences.

15         MS. NGUYEN:  I'm very hurt to come here and see my

16   son over there, and very hurt because I'm his mother and not

17   doing my job to protect him and to help him.  But the only

18   thing today I want to talk to him that the last time he

19   knows that I was right because when he asked me my opinion

20   to help the government I told him, In your situation if you

21   do that, like you play with fire, anyway you get hurt.  And

22   now he get hurt.

23         Thank you very much.

24         MR. CASTILLO:  This is Ms. Amanda To.

25         THE COURT:  Yes, sir.  I know Ms. To.

22

1      MS. AMANDA TO:  I testified.  I just wanted to say

2  if I felt my husband was guilty through all of this I would

3  never have stayed with him.  I am a law-abiding citizen and

4  I don't believe he's guilty of this.  I don't believe he

5  forced anybody to commit any crimes.  Nobody could pay me a

6  million to commit a crime.  These people chose to do what

7  they did.  Retarded or not retarded, the boy was retarded,

8  he made his way to the restaurant, he made his way to order

9  the beer, he made his way to possess the gun.  I do not

10  believe that my husband forced anybody to do anything.  I

11  think that's just an excuse.

12      For   ...  I would say what I had to say, too, to get a

13  lesser sentence.  I just want you to know I would not be

14  here.  I obey the law, I always have, and I love my husband

15  and I don't feel he's guilty.  I know he was convicted, but

16  I don't feel he's guilty.  I don't think he should take the

17  wrap for all that these guys did just because they pointed

18  the finger at him.

19      He was in a very sticky situation trying to help

20  the FBI, trying to be a husband, the whole situation.  He

21  just fell apart.  It just wasn't a fair situation and he was

22  burnt in the end.  I don't feel like he should take the wrap

23  for everybody.  I just wanted to say to everybody in the

24  courtroom thank you for hearing me, but I do believe my

25  husband is innocent.

23

1          THE COURT:  All right.

2          MS. TO:  I'm Mr. To's youngest sister.  My family

3  protected me from this whole case, so I don't know every

4  single detail of it.  But from the things I've heard, my

5  brother is some kind of monster, some kind of conniving gang

6  leader, I don't know what.  My brother -- he's my big

7  brother and he's also my -- we didn't have -- I mean, my

8  father wasn't around, so he was my father also.  He had to

9  play double roles.

10         My brother's a human being.  He has a family that

11 loves him very much.  This is not a monster.  He's not -- I

12 don't know what I can say.  I don't know what else I can

13 say.

14         THE COURT:  Thank you.

15         MR. BRUCE TO:  Your Honor, can I say something

16 else?

17         THE COURT:  Yes.

18         MR. BRUCE TO:  I ask if you can reconsider your

19 sentence.

20         THE COURT:  I'm sorry?

21         MR. BRUCE TO:  I'm asking to see if you can

22 reconsider your sentencing for my brother.

23         THE COURT:  All right.  Ladies and gentlemen, I

24 certainly appreciate the love that you bear for your brother

25 and son and husband, and I appreciate family loyalty.  It's

24

1    the very foundation of society.

2         However, sometimes family loyalty can blind one to

3    the truth.   Your husband, son, brother committed some very

4    serious crimes and did some serious injury to a lot of

5    people and now he has to pay the price.   That's a hard fact

6    for you to have to live with, it's a hard fact for him to

7    have to live with, but it has happened and we cannot erase

8    the past.

9         And 2.   There's hope that he may become rehabilitated.   At

10   some point in his service of the sentence that I have to

11   impose he may be eligible for release.   But at this time it

12   is my responsibility to impose upon him a life sentence plus

13   a number of years.   He may never be released.   He may still

14   be able to make a contribution while in the penitentiary and

15   certainly you can maintain a relationship with him.   But he

16   has to pay for his crimes, and he committed some very

17   serious crimes in the belief of the jury and in the belief

18   of this Court, and I heard every word of the testimony.

19        So thank you very much.   You may be excused.

20        Come around here, Mr. To.   Is there any reason why

21   sentence should not be imposed at this time?

22        MR. CASTILLO:   No legal reason, Your Honor.

23        THE COURT:   All right.   Mr. To, upon the verdict

24   of the jury finding you guilty of Counts 1, 2, 3, 4, 5, 6,

25   7, 8, and 9, the Court finds you guilty.

held: On Counts 1 and 2, you are committed to the Bureau of Prisons for the remainder of your natural life, each sentence to run concurrently.

On Counts 3, 4, 5, and 6, you are sentenced on each of those counts to 240 months to run concurrently with the sentences imposed in Counts 1 and 2.

On Count 7, the Court is required to impose a five-year sentence consecutive to those imposed to Counts 1 and 2.

On Count 8 and Count 9, the Court is also required by law to impose a 20-year consecutive sentence on each of those counts consecutive to each other and consecutive to the sentences imposed in Counts 1 and 2.

So in total, you are sentenced to life imprison plus forty-five years consecutive thereto. Fine is waived, cost of incarceration is waived, $450 special assessment imposed.

Now then, the Court advises you of your rights of appeal. You have a right to appeal your conviction. You have a right to appeal your sentence. If you wish to appeal, you must file an appeal by July 26. If you are unable to pay for a lawyer to represent you, the Court will appoint a lawyer to represent you on your appeal. If you wish to file a notice of appeal, you may ask the Court -- courtroom deputy to file that notice of appeal on your

26

1   behalf and it will be done.

2          Now, let me ask you if you understand your rights,

3   Mr. To?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  All right.  All right then, have I

6   omitted anything, Ms. Thomas?

7          MS. THOMAS:  Your Honor, I did not hear any

8   provision regarding restitution, and have you waived that?

9          THE COURT:  I did not.  I did order it earlier but

10  I will do it again.  The numbers are not in my -- are not at

11  my fingertips.  The amount owed to Barnett Bank on the

12  amount --

13         MR. CASTILLO:  To 7-11.

14         THE COURT:  -- and his portion to the Lins?

15         MS. THOMAS:  It would be $8,700.42.

16         THE COURT:  How much of that to the Lins?

17         MS. THOMAS:  $5,164.21.

18         THE COURT:  And how much of that to the Barnett

19  Bank?

20         MR. CASTILLO:  Southland Corporation.

21         MS. THOMAS:  Three thousand --

22         THE COURT:  Southland Corporation.

23         MS. THOMAS:  $3,563.21 to the Southland

24  Corporation.

25         THE COURT:  All right.  Those amounts will be

27

1    contained in the judgment order.

2             Now then, you have a request with respect to pla-

3    of incarceration?

4             MR. CASTILLO:  Yes, Your Honor.  If the Court

5    would consider recommending to the Bureau of Prisons that

6    the defendant be housed close to Tampa.  His family is her

7    so they would have --

8             THE COURT:  He may get a level five.

9             MR. CASTILLO:  I understand, Judge.  But whateve

10   recommendation -- somewhere close to Tampa, southeast.

11            THE COURT:  I'll recommend that he be incarcerat

12   at the appropriate level determined by the Bureau of Priso

13   at the nearest location to Tampa.

14            MR. CASTILLO:  Your Honor, the defendant has als

15   indicated that he wants to invoke his right to appeal.  I

16   have been appointed and I would ask the Court to continue

17   appointment.

18            THE COURT:  Your appointment will continue to

19   conduct the appeal, and Ms. Thomas, you'll file the notice

20   of appeal on his behalf.

21            Is there anything further?

22            MR. CASTILLO:  No, Your Honor.

23            MS. THOMAS:  No, Your Honor.

24            THE COURT:  All right.  Mr. Marshal, he's in you

25   custody.

        The Court will be recessed until 9 o'clock
orrow morning.

        THE COURT SECURITY OFFICER:  All rise.

            (Court adjourned at 3:26 p.m.)


                - - - - -


                    C E R T F I C A T E

        I certify that the foregoing is a correct
nscript of the stenographic record of proceedings held in
 above-entitled matter.

_____     _____
hael J. Cano, Court Reporter        Date

                                    8/1/96

Inmate Name: CONGHAU TO
Register Number: 18722018
United States Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

7012 3460 0003 3570 2757

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS; FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

7012 3460 0003 3570 2757



SCREENED
By USMS

JUN 12 2016

U.S. PENITENTIARY
P.O. BOX 1000
LEWISBURG, PA 17837

DATE _____
THE ENCLOSED LETTER WAS PROCESSED THROUGH
SPECIAL MAILING PROCEDURES FOR FORWARDING TO
YOU. THE LETTER HAS BEEN NEITHER OPENED NOR
INSPECTED. IF THE WRITER RAISES A QUESTION OR
PROBLEM OVER WHICH THIS FACILITY HAS JURIS-
DICTION, YOU MAY WISH TO RETURN THE MATERIAL
FOR FURTHER INFORMATION OR CLARIFICATION. IF
THE WRITER ENCLOSES CORRESPONDENCE FOR
FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN
THE ENCLOSURE TO THE ABOVE ADDRESS.

OFFICE OF THE CLERK,
SAM M. GIBBONS U.S. COURTHOUSE
801 NORTH FLORIDA AVE., 2ND FLOOR
TAMPA, FLORIDA 33602