UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:94-cr-293-MSS-SPF

CONGHAU HUU TO

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT TO'S MOTION FOR COMPASSIONATE RELEASE**

The United States opposes defendant To's motion for compassionate release. Docs. 692, 692-1. To claims multiple bases for relief in his motion, including that he is entitled to relief pursuant to Amendment 821 to the United States Sentencing Guidelines, that he is serving a sentence that is unusually long, and that the Supreme Court's decision in *United States v. Taylor*, 142 S.Ct. 2015 (2022), renders his conviction on Count Seven void. Docs. 692 at 5, 692-1 at 8-17. To is wrong and his motion should be denied. In any event, To remains a danger to the community and the 18 U.S.C. § 3553(a) factors do not support his early release from incarceration.

I.      **Background**

Defendant To and others formed their own diminutive version of an organized crime syndicate. To was a ringleader of the "V-Boys," a Vietnamese-American criminal enterprise. He personally participated in robberies and an attempted murder, and helped orchestrate a murder and attempted robbery. *United States v. To*,

*et al.*, 144 F.3d 737, 739-742 (11th Cir. 1998).[1] To and his coconspirators were charged in a nine-count indictment with racketeering violations, robberies, an attempted robbery, and firearms offenses. Doc. 3. A jury found To guilty of all counts. Doc. 328.

During To's sentencing hearing, the Court heard argument from both parties and received input from some of To's family members. Doc. 483 at 20-23. At the conclusion of that hearing, the Court sentenced To on Counts 1 and 2 to life imprisonment, each sentence to run concurrently; on Counts 3 through 6 to 240 months' imprisonment on each count to run concurrently with the life sentences imposed on Counts 1 and 2; on Count 7 to a 5-year term of imprisonment to run consecutive to the two life sentences imposed on Counts 1 and 2; and on Counts 8 and 9 to a 20-year term of imprisonment on each count to run consecutive to each other and consecutive to the two life sentences imposed on Counts 1 and 2. *Id.* at 25. Thus, in total, the defendant was sentenced to a term of imprisonment of life plus 45 years. *Id.*

To appealed to the Eleventh Circuit, which affirmed To's judgment and convictions on June 23, 1998. Doc. 531. Based upon a search of the Supreme Court's website, it does not appear that To petitioned for *certiorari*. His conviction therefore became final on September 21, 1998.

---

[1] A full reading of the Eleventh Circuit's opinion portrays a series of incredibly violent acts. *United States v. To, et al.*, 144 F.3d 737, 739-742 (11th Cir. 1998).

Thereafter, To filed a collection of unsuccessful collateral attacks. *See* Docs. 544, 566, 567, 568, 570, 582, 659, 660, 661, 664, 669, and 671. In 2016, To sought approval from the Eleventh Circuit to file a second-or-successive section 2255 motion based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Eleventh Circuit granted To's application. Doc. 667. He then filed a section 2255 motion in May 2017. Case No. 8:17-cv-1181-EAK-TBM; Civ. Doc. 1. The United States responded in opposition to that motion in July 2017, arguing, in pertinent part, that To's claim was without merit and barred by precedent. Case No. 8:17-cv-1181-EAK-TBM; Civ. Doc. 8. The district court entered an order on August 17, 2017, denying To's motion, and declining "to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because [To had] failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2)." Case No. 8:17-cv-1181-EAK-TBM; Civ. Doc. 12 at 14. The district court then entered a judgment against To. Case No. 8:17-cv-1181-EAK-TBM; Civ. Doc. 13. To appealed the district court's rulings and sought a certificate of appealability ("COA"). Case No. 8:17-cv-1181-EAK-TBM; Civ. Doc. 18. On February 11, 2019, the Eleventh Circuit denied To's motion for COA and to proceed *in forma pauperis* (as it was moot). *Id.*

Undeterred, on December 10, 2020, To filed another application seeking an order authorizing the district court to consider a second-or-successive section 2255 motion, arguing that his claim relied on a new rule of constitutional law established

in *Rosemond*. *In Re: Conghau To*, Case No. 20-14658-D (11th Cir. 2020). The Eleventh

Circuit rejected To's argument and denied his motion on January 8, 2021. *Id*.

In January 2023, To filed a motion for compassionate release, pursuant to 18

U.S.C. § 3582(c)(1)(A) and the First Step Act, which he amended. Docs. 674, 680,

681. The United States responded in opposition to To's motion in March 2023,

arguing that To had not raised any circumstances that were extraordinary and

compelling and, in any event, he continued to represent a danger to the community

and the 18 U.S.C. § 3553(a) factors did not support his early release from

incarceration. Doc. 682. To then filed a reply to the United States' response. Doc.

689. In May 2023, this Court denied To's motion for compassionate release. Doc.

690.

To again filed a second or successive 2255 motion in April 2023, asserting that

*Taylor* demonstrated that To was innocent of Count Seven, his conviction for use of

a firearm during a crime of violence. Doc. 684. That second or successive section

2255 motion was dismissed by this Court for lack of jurisdiction. Doc. 688.

Thereafter, To filed an application for leave with the Eleventh Circuit to file a second

or successive motion under 28 U.S.C. § 2255(h), which application was also denied.

Doc. 691.

Defendant To is incarcerated at Coleman Federal Correctional Complex in

Coleman, Florida, is 54 years old, and is serving a life sentence. *See* BOP Inmate

Locator at https://www.bop.gov/inmateloc/ (last accessed on March 2, 2024). To

4

commenced serving his sentence on September 18, 1996. Attachment A, Sentry Public Information Report. As discussed more fully below, To has repeatedly been sanctioned during his term of incarceration for disruptive and extremely violent criminal conduct.

## II.   Memorandum of law

### A.   Compassionate release, generally

This Court has no inherent authority to modify a sentence; it may do so "only when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015). One such statute is 18 U.S.C. § 3582(c)(1)(A), which permits a court to reduce a term of imprisonment if the court determines that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the section 3553(a) sentencing factors weigh in favor of a reduction. *Id.*; *see also United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021).

The Sentencing Commission's applicable policy statement, in USSG §1B1.13, defines "extraordinary and compelling reasons" for purposes of section 3582(c)(1)(A), and it is binding on the courts. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). Under section 1B1.13, extraordinary and compelling reasons that may render a defendant eligible for a sentence reduction fit in the following categories: (1) medical circumstances of the defendant; (2) advanced age plus length of term already served; (3) family circumstances that result in the defendant being the

only available caregiver for a minor or incapacitated immediate family member;
(4) sexual or physical abuse of the defendant by an individual with custody or control
of the defendant during the term of imprisonment sought to be reduced; (5) other
circumstances similar in gravity to those in (1) through (4); and—purportedly—(6) an
"unusually long sentence," if the defendant has served at least 10 years imprisonment
and a change in the law would produce a gross disparity between the defendant's
sentence and the sentence likely to be imposed at the time the motion is filed. USSG
§1B1.13(b)(1)–(6). (As explained more fully below, subsection (b)(6) is invalid
because it conflicts with section 3582(c)(1)(A) and exceeds the Sentencing
Commission's statutory authority.)

If the court finds that an extraordinary and compelling reason exists, it still
may not reduce the defendant's term of imprisonment under section 3582(c)(1)(A)
unless it also finds that the defendant's release would not endanger the community
and that the factors listed in 18 U.S.C. § 3553(a) favor compassionate release. *Tinker*,
14 F.4th at 1237. If the defendant fails to establish any of the three requirements, the
court need not analyze the other requirements and cannot grant relief. *See United
States v. Giron*, 15 F.4th 1343, 1348 (11th Cir. 2021).

The defendant, as movant, bears the burden of establishing entitlement to
relief under section 3582. *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)
(addressing a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2)). And
the defendant must first "fully exhaust all administrative rights to appeal a failure of

the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See United States v. Harris*, 989 F.3d 908, 909–10 (11th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The exhaustion requirement is "mandatory, in the sense that a court must enforce the rule if a party properly raises it." *Harris*, 989 F.3d at 911 (internal quotation marks omitted).

### B.   Defendant To's compassionate release motion

### i.   Exhaustion

To asserts that he sought a sentence reduction on October 24, 2023,[2] and the Warden denied the application on November 15, 2023. *See* Doc. 692. To failed to file an administrative appeal of the Warden's decision. More than 30 days passed from the BOP's receipt of To's original application before he filed his motion in this Court, so this Court may consider the merits of To's motion.

### ii.   Extraordinary and compelling circumstances

Here, To requests a reduction of his sentence based on three grounds. First, To raises a claim that he is entitled to relief pursuant to Amendment 821 to the United States Sentencing Guidelines. Doc. 692 at 5, 692-1 at 8-10. Should this Court wish to consider To's claim for relief pursuant to Amendment 821, the United States requests that this Court adhere to the Order Regarding Amendment 821 to the United States

---

[2] The application date listed is October 23, 2023. This one-day discrepancy does not alter the exhaustion analysis.

Sentencing Guidelines, 3:21-mc-1-TJC. This Order advances an efficient and collaborative procedure to determine a defendant's eligibility for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821. *Id.*

To's third claim for relief—his second claim is discussed immediately below—repeats an earlier failed challenge to his sentence under section 2255, discussed above at page 4, asserting that *Taylor* demonstrates that his conviction and sentence on Count Seven, predicated on Count Four, is now void and mandates that To be resentenced. Doc. 692 at 5, 692-1 at 17. That claim should be summarily rejected here. The compassionate release provision in section 3582(c)(1)(A) does not authorize relief based on a legal challenge to a defendant's conviction or sentence. *See, e.g.*, *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) ("a district court does not have discretion to consider new evidence proffered for the purpose of attacking the validity of the underlying conviction in its balancing of the 18 U.S.C. § 3553(a) factors. Facts and arguments that purport to undermine the validity of a federal conviction must be brought on direct appeal or pursuant to 28 U.S.C. § 2255 or § 2241."); *United States v. Henderson*, 858 F. App'x 466, 469 & n.2 (3d Cir. 2021) (not precedential) (a previously rejected claim of sentencing error does not qualify as an "extraordinary and compelling reason" for compassionate release, and to the extent that the defendant argues that his sentence should be vacated on this basis, such a claim can be raised only in a section 2255 motion); *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022) ("Because § 2255 is the exclusive method

of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements."); *United States v. Wesley*, 60 F.4th 1077, 1289 (10th Cir. 2023) ("We hold that an 18 U.S.C. § 3582(c)(1)(A)(i) motion may not be based on claims specifically governed by 28 U.S.C. § 2255"); *petition for rehearing en banc denied*, 78 F.4th 1221 (10th Cir. 2023). Recent post-amendment district court decisions have held likewise. *United States v. Gross*, 2023 WL 8716878, at *10 (D. Md. Dec. 18, 2023) (Hollander, J.); and *United States v. Young*, 2023 WL 8722060, at *5 (W.D. Va. Dec. 18, 2023) (Urbanski, C.J.).

To's remaining second claim is that, in light of *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000), *Alleyne v. United States*, 133 S.Ct. 2151 (2013), and *United States v. Rosemond*, 134 S.Ct. 1240 (2014), To is serving an unusually longer sentence than that allowed under the law. Doc. 692 at 5, 692-1 at 11-16. As relevant here, USSG §1B1.13(b)(6) purportedly permits a reduction of a defendant's sentence based on an unusually long sentence when:

> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Section 1B1.13(c) further provides that, except as provided in subsection (b)(6), a court cannot consider a change in the law (including a non-retroactive

guidelines amendment) for purposes of determining whether an extraordinary and compelling reason exists. USSG §1B1.13(c). But, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction, a court may consider a change in the law (including a non-retroactive guidelines amendment) in determining the extent of any reduction. *Id.*

### C. An unusually long sentence is not a valid basis for compassionate release, because the Sentencing Commission exceeded its congressionally delegated authority in promulgating subsection (b)(6).

Here, To argues that he has established extraordinary and compelling reasons for release based in part on a change in the law that, according to To has produced a gross disparity between his sentence and the sentence he would receive if he were sentenced for the same offenses today. *See* Doc. 692 at 5 and 692-1 at 11-16. Although Congress has delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the text, structure, and purpose of 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(a), and is therefore invalid.

### i. In exercising its authority, the Commission cannot act contrary to statutory authority.

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). This delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of

delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not reasonable. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53–58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and, as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added).

### ii.    Subsection (b)(6) conflicts with section 3582(c)(1)(A)'s plain text, context, and purpose.

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly

when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid.[3] *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

### a.   To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling."

The majority of the circuits to have considered the issue have concluded that, as a matter of plain language, an intervening change in the law is neither extraordinary nor compelling. *See United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198–1200 (D.C. Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (unpublished).[4] This Court should conclude the same.

---

[3] The Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute. *DePierre v. United States*, 564 U.S. 70, 87 (2011). This court need not resolve the question because the statute unambiguously excludes the Commission's chosen interpretation. *See, e.g.*, *LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under [*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)].").

[4] Four circuits have held that a change in law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28 (1st Cir.); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-1098 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-1048 (10th Cir. 2021). The Eleventh Circuit has not yet decided the issue.

To contends that *Apprendi* (June 26, 2000), *Alleyne* (June 27, 2013), and *Rosemond* (March 5, 2014), which were decided approximately 21 months, 14 years and 9 months, and 15 years and 5 months, respectively, after To's sentence became final on September 21, 1998, constitute an "extraordinary and compelling" reason for a sentence reduction under subsection (b)(6). But none of those intervening decisions establish a *change* in the law; rather, To claims that the decisions establish an error that occurred at his trial and/or sentence, which he claims is now apparent in light of the intervening decisions. That contention accordingly does not qualify as a "change in law" under subsection (b)(6).

In any event, neither *Apprendi* nor *Alleyne* applies retroactively to To's sentence.[5] When a change in the law is not retroactively applicable to a sentence that is already final, nothing is "extraordinary" about that final sentence reflecting prevailing law at the time when it was imposed. Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning … at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English*

---

[5] *See United States v. McCoy*, 266 F.3d 1245, 1258 (11th Cir. 2001) (*Apprendi* does not apply retroactively on collateral review); *Jeanty v. Warden, FCI Miami,* 757 F.3d 1283, 1285-1286 (11th Cir. 2014) (*Alleyne* does not apply retroactively on collateral review).

*Language* 807 (1971) (*Webster's*)). Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced. And any potential disparity between his sentence and the sentence he might receive today merely reflects the operation of ordinary nonretroactivity principles.

A nonretroactive change in sentencing law likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under section 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.* (internal quotation marks omitted). Ordinary principles of nonretroactivity, however, already consider, and reject, the notion that all changes in the law should be allowed to disturb final convictions and sentences. The very point of the doctrine is to identify the small subclass of changes in the law that should be applied retroactively. To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law compels such a nonsensical outcome.

Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as

adding to a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, a nonretroactive change in sentencing law is a "legally impermissible" consideration in determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202; *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

Further, to the extent To is suggesting that *Rosemond* presents a scenario that is "extraordinary" and "compelling" under section 3582(c)(1)(A)(i), To is off base. While *Rosemond* does apply retroactively to cases on collateral review, *see Steiner v. United States*, 940 F.3d 1282 (11th Cir. 2019), *Rosemond* was decided in 2014, so any claim based on that would be untimely. Further, as explained above at page 4, To has previously filed an application with the Eleventh Circuit seeking an order authorizing the district court to consider a second-or-successive section 2255 motion, relying on *Rosemond*, which was denied in January 2021. Doc. 673.

> **b.** **Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law.**

Congress expressly required that any reason for a sentence reduction be both "extraordinary and compelling," 18 U.S.C. § 3582(c)(1)(A)(i). As explained above, an intervening change is neither, under those terms' ordinary meaning, and by using

that phrase Congress placed clear textual limits on the reasons the Commission may use to warrant a sentence reduction.

"Statutory construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features of the scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

Most notably, in the very next paragraph—section 3582(c)(2)—Congress expressly addressed the retroactive application of some changes in law, authorizing courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law shows that Congress did not intend for section 3582(c)(1)(A) to reach such changes.

16

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a 28 U.S.C. § 2255 motion is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057–58 (internal quotation marks omitted).

    **c.**    **Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under section 3582(c)(1)(A)(i) also would undermine a primary purpose of the Sentencing Reform Act, in which that provision was enacted**.

Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and

"uncertainty as to the time [an] offender would spend in prison." *Mistretta v. United States*, 488 U.S. 361, 366 (1989) (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal v. United States*, 516 U.S. 284, 290–91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system."). In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia v. United States*, 564 U.S. 319, 325 (2011).

Consistent with Congress's goal of determinate sentencing, section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. USSG §1B1.13(b)(6). That authority is incompatible with the Sentencing Reform

Act's overarching purpose and Congress's specific intent with respect to section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity" (and what a "gross disparity" looks like). It is doubtful the Sentencing Reform Act "contained the[] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, so there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling

circumstances justify a reduction of an unusually long sentence." Senate Report at 55. The Commission took that line—which is ambiguous at best—out of context and elevated that single sentence above the Act's plain text and overarching purpose. In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example. *Id.* Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood section 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances." *Id.* The passage does not suggest that section 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invoked the First Step Act of 2018's stated intent to increase the use of sentence-reduction motions. *See* 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239. But nothing about the First Step Act's procedural amendment to section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision "suggests Congress intended to change th[e] *substantive* status quo with a process-oriented amendment." *McCall*, 56 F.4th at 1060 (emphasis added). Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived deficiencies in the BOP's preexisting procedures, which prevented the BOP from filing section 3582(c)(1)(A) motions on behalf of

some defendants who satisfied longstanding criteria for relief. Congress, however, did not amend the statutory requirement that the reason for a sentence reduction be extraordinary and compelling. Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[]" with BOP a request that BOP "bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). Congress could not have expected BOP to evaluate whether an intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating guideline ranges," or assessing the possible disparity produced by a defendant's sentence. *See Jenkins*, 50 F.4th at 1205–06. In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress … does not, one might say, hide elephants in mouseholes.").

> **d.    Finally, the Commission's interpretation of section 3582(c)(1)(A) to allow district courts to apply nonretroactive changes in law to particular defendants is in serious tension with basic separation-of-powers principles.**

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another

Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment, ... these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and USSG §1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* USSG §1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. USSG §1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive

application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

**e.    Congress's failure to reject the Commission's amendment does not demonstrate congressional acquiescence to the Sentencing Commission's interpretation**.

The Supreme Court has categorically rejected the claim that Congress's failure to reject a Guidelines amendment "means that it has effectively adopted [the Commission's] interpretation with respect to the statute." *DePierre*, 564 U.S. at 87. A court "[o]rdinarily" should resist reading congressional intent into congressional inaction," *Kimbrough v. United States*, 552 U.S. 85, 106 (2007), and Congress's failure to expressly disapprove of the amendment does not mean that the Commission acted consistent with the statute. Indeed, policy statements like the one at issue here need not be submitted to Congress at all. *See* 28 U.S.C. § 994(p) (requiring only that changes to "guidelines" be submitted for congressional review); *id.* § 994(a)(1)–(2) (distinguishing between guidelines and policy statements). If Congress's failure to disapprove a guideline is entitled to no weight in assessing the lawfulness of the Commission's action, the same is certainly true of a policy statement, which Congress might well conclude need not have been submitted in the first place.

**f.     *Concepcion* also does not authorize reductions under subsection (b)(6).**

In *Concepcion*, the Supreme Court considered the scope of a district court's

discretion under section 404 of the First Step Act, which provides an explicit

statutory mechanism for a court to revisit the sentence of a defendant convicted of a

crack-cocaine offense "the statutory penalties for which were modified by section 2

or 3 of the Fair Sentencing Act of 2010." § 404(a), 132 Stat. 5222; *see id*. § 404(b), 132

Stat. 5222; *Concepcion v. United States*, 142 S. Ct. 2389, 2397 (2022). The Court

explained that, in adjudicating a motion under section 404, a district court "may

consider other intervening changes" of law or fact, beyond the changes made by

those sections of the Fair Sentencing Act. *Concepcion*, 142 S. Ct. at 2396.

Unlike section 404, which directly authorizes sentence reductions for a

specifically defined subset of previously sentenced drug offenders, section

3582(c)(1)(A)(i) contains a threshold requirement that a district court identify

"extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C.

§ 3582(c)(1)(A)(i). Indeed, the Court in *Concepcion* identified section 3582(c)(1)(A) as

a statute in which "Congress expressly cabined district courts' discretion" in a way

that section 404 does not. 142 S. Ct. at 2401.

**C.     Danger to the community**

Even if this Court rejects everything above and rules that subsection

1B1.13(b)(6) is valid, and further finds that To has established extraordinary and

compelling circumstances (which he has not), it still should not reduce To's sentence

because he remains a danger to the community. Prior to the incredibly violent charges giving rise to the instant case, To's PSR notes that he had a previous conviction for an armed robbery during which he pointed an automatic firearm at the victim, as well as a conviction for possession of a firearm by a convicted felon. Doc. 663 at ¶¶ 107-111. To has also been disciplined repeatedly while serving his sentence. Indeed, over the last eleven years, To has been sanctioned for possessing a dangerous weapon (August 27, 2013), stabbing another inmate in the upper left chest area with a homemade weapon (July 15, 2016), possessing a dangerous weapon (September 26, 2020), and, most recently, for killing another inmate (September 5, 2023). Attachment B, Inmate Discipline Data, Chronological Disciplinary Record (selected pages).

## D.    Factors in 18 U.S.C. § 3553(a)[6]

Finally, this Court should not grant To a reduction of his sentence because the applicable sentencing factors in section 3553(a) weigh against release. To has multiple convictions involving the threatened and actual use of deadly weapons and the crimes committed by To merited the life sentenced imposed by the Court in this

---

[6] These are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

case. That sentence properly reflected the incredible seriousness of To's violent criminal conduct, provided just punishment for the offenses, afforded deterrence to other like-minded criminals, and, critically, provided protection to the public from further crimes of the defendant. To is dangerous and should remain incarcerated.

Lastly, To's premature release would infringe on his victim's right to reasonable protection under the Crime Victims' Rights Act, which specifies that crime victims have "[t]he right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). The CVRA requires that the Court "ensure that the crime victim is afforded the rights" contained therein, which include "the right to reasonable, accurate, and timely notice of any public court proceeding" involving a defendant's release. 18 U.S.C. § 3771(a)(2), (b)(1).

THEREFORE, this Court should deny To's motion for compassionate release.

Respectfully submitted,

ROGER HANDBERG
United States Attorney

By:   */s/ Jay G. Trezevant*
Jay G. Trezevant
Assistant United States Attorney
Florida Bar No. 0802093
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358
E-mail:        jay.trezevant@usdoj.gov

**U.S. v. Conghau Huu To**                    **Case No. 8:94-cr-293-MSS-SPF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 7, 2024, a true and correct copy of the foregoing document and the notice of electronic filing were sent by United States Mail to the following non-CM/ECF participant(s):

Conghau Huu To
BOP #18722-018
Federal Correctional Complex, USP I
Inmate Mail/Parcels
P.O. BOX 1033
Coleman FL 33521-1033

By:   */s/Jay G. Trezevant*
      Jay G. Trezevant
      Assistant United States Attorney