UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO: 8:94-cr-293-MSS-SPF-1

CONGHAU HUU TO

_____

ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release), (Dkt. 692), the Government's response in opposition, (Dkt. 699), and Defendant's reply thereto. (Dkts. 704, 703, 706, 708) Defendant Conghau Huu To was charged in a nine-count indictment with racketeering violations, robberies, an attempted robbery, and firearms offenses. (Dkt. 3) On March 4, 1996, after a trial, Defendant was found guilty of all counts. On July 18, 1996, Defendant was sentenced to a term of life imprisonment on each of Counts 1 and 2, each sentence to run concurrently, 240 months' imprisonment on each of Counts 3 through 6, to run concurrently with the life sentences imposed on Counts 1 and 2, 60 months' imprisonment on Count 7, and 240 months on each of Counts 8 and 9, with the terms of Counts 7, 8, and 9 to run consecutively to each other and to the life sentences imposed on Counts 1 through 6. (Dkt. 417) Thus, in total, Defendant was sentenced to a term of life plus 45 years. (Id.) Defendant is 55 years old and is incarcerated at U.S.P. Florence ADMAX. See BOP

Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed September 12, 2024).

Defendant appealed and the Eleventh Circuit affirmed his judgment and convictions. (Dkts. 418, 531) Thereafter, Defendant filed several unsuccessful collateral attacks. (Dkts. 544, 566, 567, 568, 570, 582, 659, 660, 661, 664, 669, 671, 684, 688)

In the instant Motion, Defendant first requests a reduction in his sentence pursuant to Amendment 821, which amended § 4A1.1 of the United States Sentencing Guidelines. The retroactive application of Amendment 821 would not affect Defendant's sentence. Part A of the amendment struck subsection (d) of § 4A1.1, which stated, "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." According to the Presentence Investigation Report (the "PSR"), two points would have been warranted pursuant to subsection (d). (Dkt. 663 at 17) The retroactive application of Amendment 821 would result in the removal of these two points. However, Defendant's Total Offense Level was 46. (Id.) Under the Sentencing Guidelines, any total offense level of 43 or greater results in a life sentence, regardless of the defendant's criminal history category. Thus, in Defendant's case, a reduction in his Criminal History Category does not affect his sentence. Even after retroactive application of Amendment 821, Defendant's guideline range is a life sentence. For this reason, Defendant's request to reduce his sentence under Amendment 821 is **DENIED**.

Defendant also seeks compassionate release from incarceration pursuant to 18 U.S.C. § 3582(c)(1)(A). Defendant argues § 3582(c)(1)(A) permits this Court to reduce his sentence because his sentence is unusually long as compared to current sentences due to intervening changes in the law. A district court may reduce a defendant's sentence of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Before a defendant may seek such relief from a district court, however, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Id. at § 3582(c)(1)(A). Defendant contends in his Motion that he submitted a request for compassionate release to the warden of his facility on October 24, 2023. (Dkt. 692 at 3) Defendant contends the warden denied his request on November 15, 2023. (Id.) The Government concedes Defendant exhausted administrative remedies. (Dkt. 699 at 7) Accordingly, Defendant's Motion is ripe for review on the merits.

Section 3582(c)(1)(A) does not define what constitutes "extraordinary and compelling reasons." 28 U.S.C. § 994(t). Instead, Congress delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." Id. The Sentencing Commission's existing policy statement on compassionate release is U.S.S.G. § 1B1.13. The policy statement defines "extraordinary and compelling reasons" for purposes of 3582(c)(1)(A) and it is binding on this Court. United States v. Bryant, 996 F.3d 1243, 1262 (11th Cir. 2021).

Under § 1B1.13, circumstances identified in the following categories may render a defendant eligible for a sentence reduction: (1) serious medical circumstances of the defendant; (2) advanced age, resulting in a serious deterioration in physical or mental health, where the defendant has served the lesser of at least 10 years or 75 percent of the term of imprisonment; (3) family circumstances that result in the defendant being the only available caregiver for a minor or incapacitated immediate family member or similar individual; (4) sexual or physical abuse of the defendant by an individual with custody or control of the defendant during the term of imprisonment sought to be reduced; (5) other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in (1) through (4), are similar in gravity to those described in (1) through (4); and (6) an "unusually long sentence," if the defendant has served at least 10 years' imprisonment and a change in the law would produce a gross disparity between the defendant's sentence and the sentence likely to be imposed at the time the motion is filed. U.S.S.G. § 1B1.13(b)(1)–(6).

Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. U.S.S.G. § 1B1.13(2). Additionally, the court must consider, in general, whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. In seeking compassionate release, the defendant "bears the burden of establishing that compassionate release is warranted." United States v. Heromin, No. 11-cr-550, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)

(citing United States v. Hamilton, 715 F.3d 328, 341 (11th Cir. 2013)). Even if a defendant meets that burden, "the district court still retains the discretion to determine whether a sentence reduction is warranted." Hamilton, 715 F.3d at 341.

Defendant argues changes in the law have produced a gross disparity between his sentence and the sentence likely to be imposed today. Defendant contends these changes in the law resulted from the decisions in Apprendi v. New Jersey, 530 U.S. 466, 466 (2000), and Rosemund v. United States, 572 U.S. 65 (2014). However, if he were sentenced today, Defendant would receive a life sentence. According to the PSR, beginning at least as early as March of 1993, Defendant and two co-conspirators organized the criminal activities of the other co-defendants to commit robberies to obtain money. (Dkt. 663 at 3) The first robbery for which Defendant was convicted occurred during the late evening of April 22 and the early hours of April 23, 1994. (Id. at 4) Defendant and his co-defendants sought to rob Khanh Quoc Le, a restaurant manager, who was reportedly carrying a large amount of cash on his person. (Id.) During the robbery, at least three of the co-defendants were armed with firearms. (Id.) One co-defendant, Tam Minh Le, pursued Khanh Quoc Le when he tried to run away. (Id.) The two engaged in a struggle. (Id.) Ultimately, Tam Minh Le shot Khanh Quoc Le in the chest at point blank range. (Id.) The wound killed Khanh Quoc Le. (Id.)

The PSR grouped Counts 1, 2, 3, and 4 together as Group 1 under U.S.S.G. § 3D1.2(b). (Id. at 11–12) Group 1 consisted of the April 23, 1994 robbery and murder. (Id. at 12) The base offense for Group 1 was a violation of 18 U.S.C. § 1951, the guideline for which is found at U.S.S.G. § 2B3.1. (Id.) The cross-reference in U.S.S.G.

5

§ 2B3.1(c) requires the application of U.S.S.G. § 2A1.1, the guideline for first degree murder, when "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the . . . jurisdiction of the United States[.]" U.S.S.G. § 2B3.1(c). Today, as well as at the time Defendant was sentenced, the guideline for first degree murder establishes a base offense level of 43. U.S.S.G. § 2A1.1(a). The PSR recommended increasing the offense level by three levels pursuant to U.S.S.G. § 3B1.1(b) to reflect Defendant's role in the offense. (Dkt. 663 at 12) It also recommended increasing the offense level by two levels pursuant to U.S.S.G. § 3C1.1 to reflect Defendant's obstruction of justice. (Id. at 13) Thus, the PSR determined the Adjusted Offense Level for Group 1 was 48. (Id. at 13) A review of the Sentencing Guidelines reveals this calculation would be the same even if Defendant were sentenced today.

The PSR also determined the Adjusted Offense Levels for each of the other groups of counts, except Group 5.[1] Group 2 was scored an Adjusted Offense Level of 22, Group 3 was scored an Adjusted Offense Level of 28, and Group 4 was scored an Adjusted Offense Level of 33. (Dkt. 663 at 15) Pursuant to U.S.S.G. § 3D1.4, the PSR calculated the Combined Offense Level, and ultimately the Total Offense Level, to be 48. (Id. at 16) This calculation would not be different under the current Sentencing Guidelines. (Id. at 15) U.S.S.G. § 3D1.4.

---

[1] The Report stated that under U.S.S.G. § 2K2.4(a), "if the defendant . . . was convicted under 18 U.S.C. 924(c), the term of imprisonment is that required by statute." (Dkt. 663 at 15) Group 5 consisted of the counts under 18 U.S.C. 924(c), which related to the use of firearms during crimes of violence, Counts 7, 8, and 9. (Id.)

At sentencing, the Court determined the guideline range was life imprisonment. The Court determined the Total Offense Level to be 46 and the Criminal History Category to be V. Defendant does not challenge the Court's determination of the Criminal History Category. Rather, Defendant disputes that his base offense level for Group 1 can be increased to 43 due to Khanh Quoc Le's killing. He states in his Motion, "[T]he existence of a 'conspiracy to commit robbery' cannot sustain liability for 'murder' under the Pinkerton theory of liability." (Dkt. 692 at 19) However, "[i]t is well established that, under the Pinkerton doctrine, '[a] co-conspirator is vicariously liable for the acts of another co-conspirator even though he may not have directly participated in those acts, his role in the crime was minor, or the evidence against a co-defendant more damaging.'" United States v. Alvarez, 755 F.2d 830, 849 (11th Cir. 1985). "Thus, in a typical Pinkerton case, the court need not inquire into the individual culpability of a particular conspirator, so long as the substantive crime was a reasonably foreseeable consequence of the conspiracy." Id. at 849–50. In Alvarez, the Eleventh Circuit affirmed the appellants' murder convictions under Pinkerton "despite the fact that the murder was not within the originally intended scope of the conspiracy." Id. at 851.

Here, the jury found Defendant guilty of the count of conspiracy to commit robbery related to the April 23, 1994 robbery. Khanh Quoc Le's killing was a reasonably foreseeable consequence of that conspiracy. Defendant and his co-conspirators intended to rob Khanh Quoc Le. (Dkt. 663 at 4) To carry out the robbery, at least three of the co-conspirators armed themselves with firearms. One co-

7

conspirator armed himself with a shotgun which belonged to Defendant and which Defendant's co-conspirator obtained from Defendant's car. (Id.) These circumstances establish the killing was a reasonably foreseeable consequence of the robbery. Accordingly, Defendant is liable for the killing of Khanh Quoc Le. At the time of sentencing, the Court appropriately determined the base offense level for the counts related to the April 23, 1994 robbery to be 43. Defendant does not establish that a change in the law has produced a gross disparity between his sentence and the sentence likely to be imposed today because if he were sentenced today, Defendant would receive a life sentence.

Additionally, Defendant argues that the decision in United States v. Taylor, 596 U.S. 845 (2022), establishes he is innocent of his conviction for use of a firearm during a crime of violence in Count 7. In Taylor, the U.S. Supreme Court held that attempted Hobbs Act robbery does not qualify as a "crime of violence" under § 924(c)(3)(A). 596 U.S. at 845. Defendant argues that if he were tried today, he could not be found guilty of the count which charged him with the use of a firearm during attempted Hobbs Act robbery. The Court agrees. The jury found Defendant guilty of Count 4, which charged him with committing attempted robbery on April 23, 1994 in violation of the Hobbs Act. (Dkt. 328) To, 144 F.3d at 743. The jury also found Defendant guilty of Count 7, which charged Defendant with using and carrying a firearm on April 23, 1994 during and in relation to a federal crime of violence in violation of 18 U.S.C. § 924(c)(1). Id. at 742–43. But since the Supreme Court's decision in Taylor, a defendant cannot not be convicted of violating § 924(c)(1) during and in relation to attempted Hobbs Act

8

robbery. 596 U.S. at 845. Thus, if Defendant were tried today, he would not be found guilty of Count 7.

Moreover, Defendant's sentences for Counts 8 and 9 would be lower if he were sentenced today. Under the First Step Act of 2018, section 924(c) convictions may no longer be "stacked." Before the First Step Act, "separate § 924(c) counts charged in the same indictment could be 'stacked[,]' leading to dramatically increased penalties for any 'second or subsequent conviction.'" United States v. Hernandez, 107 F.4th 965, 967 (11th Cir. 2024). For example, a defendant convicted of two § 924(c) counts charged in the same indictment could receive a five-year sentence for the first conviction and a twenty-year sentence for the second. Id. The First Step Act modified the stacking rule. Id. The twenty-year penalty for a second or subsequent offense under § 924(c) may only be imposed upon offenders with a final prior firearms conviction, as opposed to those with multiple § 924(c) charges in a single case. Id. at 968. Here, Defendant was convicted of his first firearm conviction under § 924(c), Count 7, and was sentenced to the mandatory minimum of five years. (Dkt. 417 at 3) In the same case, he was convicted of his second and third firearm convictions, Counts 8 and 9, and was sentenced to twenty years for each of these counts, to run consecutively. (Id.) If Defendant were sentenced today, he would receive only two sentences of five years each, one for Count 8 and one for Count 9. Where Defendant received a 45-year sentence for his § 924(c) convictions in 1996, today, Defendant would receive a ten-year sentence.

Nonetheless, the Court concludes Defendant is not serving an "unusually long

9

sentence." U.S.S.G. § 1B1.13(b)(6). The changes in law which would result in a shorter sentence for Defendant's § 924(c) convictions do not produce a "gross disparity" between Defendant's sentence and the sentence likely to be imposed today. Id. Defendant received a life sentence in 1996, and he would receive a life sentence today, regardless of the sentence imposed for his § 924(c) convictions. Thus, the Court finds no "extraordinary and compelling reasons" which would warrant a reduction in Defendant's sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

Moreover, the § 3553(a) factors do not favor compassionate release, and Defendant continues to pose a danger to the public. The charges giving rise to this case are particularly violent. Defendant was one of the organizers of a violent gang that committed a series of home and business robberies targeting Asian-American restaurant owners and managers in the Tampa, Florida, area. (Dkt. 663); To, 144 F.3d at 739–42. Defendant participated in several robberies and an attempted murder and helped to orchestrate a murder and attempted robbery. To, 144 F.3d at 739–42. In its response, the Government advises that Defendant has been disciplined repeatedly while serving his sentence, including being sanctioned for possessing a dangerous weapon on several occasions. (Dkt. 699 at 25) Defendant was disciplined in 2016 for stabbing another inmate with a homemade weapon. (Dkt. 699-2 at 2) Most recently, Defendant was disciplined for killing another inmate. (Id. at 1) Consequently, the Court finds that Defendant's sentence reflects the seriousness of the offense conduct, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, and protects the public from further crimes of the Defendant. See 18

U.S.C. § 3553(a)(2). In light of the serious nature of the offense conduct, the Court finds that a reduction of Defendant's sentence would undermine the statutory purposes of sentencing as previously determined by the Court and would endanger the public. As such, Defendant's request compassionate release pursuant to § 3582(c) is **DENIED**.

Accordingly, it is hereby **ORDERED** that Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (Dkt. 692), is **DENIED**.

**DONE and ORDERED** in Tampa, Florida, this 19th day of September 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies to:**   Counsel of Record
U.S. Marshal Service
U.S. Probation Office
U.S. Pretrial